Allan L. JANSSEN and Jo Ann Janssen *v.* Byron
MCKIMMEY, Eugene J. Mazzanti, Robert M. Mitcham,
Ken Shivey, Marvin H. Day, William Kelly, CCMN Joint
Venture, and Allen G. Gold, d/b/a Little Italy Company

91-13                                    807 S.W.2d 920

Supreme Court of Arkansas
Opinion delivered April 29, 1991
[Rehearing denied June 3, 1991.*]

*Joyce Kinkead*, for appellants.

*Davidson Law Firm, Ltd*, by: *Charles Phillip Boyd, Jr.*, for
appellees.

---

*Dudley and Hays, JJ., not participating.

TOM GLAZE, Justice. This case involves the purchase of two tracts of land by the appellants, Allan and Jo Ann Janssen, from a limited partnership known as the Little Italy Company. The appellants brought this suit to rescind the sale, alleging that the Little Italy Company, through its broker, Real Estate Central, and sales agent, Floyd "Spider" Webb, made a fraudulent misrepresentation about constructing a road to the tracts. After a full trial, the chancellor found the appellants failed to prove their claims and denied them any relief. We uphold the chancellor's decision.

The tracts in dispute are undeveloped property located in a wooded area. The property is somewhat out-of-the-way, but the Janssens said that Mr. Webb told them "that a road would be cut through from [Highway] 300 so we could reach the property." Mr. Janssen later restated Webb's promise as "a road would be constructed to his property." Janssen testified that Webb made these statements repeatedly. The Janssens also asserted that Webb never informed them of Reece Creek which, when it rained, would flood making it difficult or impossible at times to drive to the two tracts.

The proof at trial reveals that there is a private dirt road, leading to the Janssens' property from Highway 300. A video tape taken after a rain shows the road to be rough in places and somewhat difficult to traverse unless the driver was in a truck or four-wheel-drive vehicle. Photographs introduced at trial reflect a dirt road that, while having been bulldozed and graded, is clearly passable, wide enough in places for two vehicles, and smoother in appearance than when it was video taped. Regardless of the road's varying appearance as shown by the photographs and tape, the question centers on the type of road Webb and the Little Italy Company represented the Janssens would have from Highway 300 to their property. Both Janssens agreed that Webb had never told them that a paved or gravel road would be built or that a bridge would be constructed over Reece Creek. In fact, Mr. Janssen on cross-examination testified as follows:

> Q. (referring to his deposition) Did he ever say we are going to build you a road that you can drive a Toyota car down that sits low to the ground or that you can drive a normal car down in two wheel drive? And your answer is,

He never said that. Is that true?

A. That's true. But he did say they would construct a road.

\* \* \*

Q. Okay. Would you agree with me, sir, that everyone's definition of what is a road, quote, would be different, including Mr. Webb's?

A. Yes, sir.

Q. Did you ever ask for any type of a clarification on what type of road would be out there on the property?

A. No, just that it would be a passable road that we could reach our property on.

\* \* \*

Q. Fact of the matter is though, you cannot say that Mr. Webb ever intentionally lied or made any intentional mistatements to you, is that true?

A. That would be true, yes, sir.

\* \* \*

Q. Now, in regards to a. . .even assuming, without me agreeing with you, but even assuming that Mr. Webb stated that they would, quote "construct" a road there. You have a road like the road that's on the film that goes right by and right to your property, don't you?

A. It's like that, yes, sir.

Q. And the kind of road never was defined and you never asked for clarification, did you? Yes or no?

A. No.

Consistent with the Janssens' above versions of what was and was not represented, Webb said the following:

Q. Well, this is the question, Spider. Did you, at any point in time during your dealings with the Janssens, ever

tell them that Real Estate Central, Little Italy Company, or anyone was going to build them any kind of road to their property?

A. Yes.

Q. What did you tell them?

A. A dozer-type road.

Q. Okay.

A. They would cut through the woods, it would be forty to fifty feet wide, occasionally, maybe, a grader, but it basically would be a bulldozer road, a dirt road, a private road not associated with the county.

Q. Is that the type of road (as pictured) that they were supposed to get?

A. Yes, actually. It's difficult for me to remember all portions of that, but the road was actually put in. In fact, we advertised in the paper and had an open house up there and I had several people come up in their vehicles, regular passenger cars, to go over the road to see the property.

* * *

Q. Did you ever tell them a bridge for them would be built over Reece Creek?

A. We never mentioned a bridge. I may have mentioned a low water crossing, which eventually was put in. . .

In sustaining their burden in this case, the Janssens were required to prove the following elements of misrepresentations and fraud: (1) a false representation, usually of material fact; (2) knowledge or belief on the part of the person making the representation that the representation is false or that there is not a sufficient basis of information to make such a representation; (3) an intent to induce the other party to act or refrain from acting in reliance upon the misrepresentation; (4) a justifiable reliance upon the representation by the other party in taking action thereon; and (5) resulting damages. *Brookside Village Mobile Homes* v. *Meyers*, 301 Ark. 139, 782 S.W.2d 365 (1990); *McWilliams* v. *Zedlitz*, 294 Ark. 336, 742 S.W.2d 929 (1988);

*Croley* v. *Baker*, 237 Ark. 136, 371 S.W.2d 830 (1963). Here, the chancellor, in evaluating all the evidence before her, found that "an honest misunderstanding" existed between the parties and that neither the Little Italy Company nor its agents made any misrepresentation that could constitute grounds for rescission.

■ Of course, we review chancery cases *de novo*, but we do not reverse the chancellor's factual findings unless they are clearly erroneous. *Wilson* v. *Wilson*, 301 Ark. 80, 781 S.W.2d 487 (1989). Furthermore, this court gives due regard to the opportunity of the trial court to judge the credibility of the witness. ARCP Rule 52(a).

In reaching her decision, the chancellor found the Janssens to be credible witnesses, but, as we have reviewed above, the respective parties' proof was not that diverse. The chancellor emphasized that the Janssens' versions of what they had been told about a road was "pretty non-specific." In fact, they were unable to say what type of road they were promised, and they admitted they were never promised a paved or gravel road or a bridge constructed over Reece Creek. There is a dirt road from Highway 300 leading into the Janssens' tracts, and other evidence reflected the road had been graded.

In making their argument here on appeal, the Janssens rely on Webb's asserted use of the language "construct a road" and state that no road was ever constructed. Specifically, they contend that the Little Italy Company has only maintained an existing logging trail. As cited by the Janssens, one definition for construct is to make ready for use. *Black's Law Dictionary* 283 (5th ed. 1979). Although there was an existing logging road when the Little Italy Company purchased the property, evidence shows that the company put in at least part of the road, graded the road, and put in a low water crossing. In other words, we believe that the evidence shows that the Little Italy Company made the road ready for use.

■ In sum, we are unable to say, given the evidence before us, that the chancellor was clearly erroneous in finding the Little Italy Company or its agents did not make a misrepresentation warranting a rescission of their sale of the tracts to the Janssens. Thus, we affirm.

DUDLEY and HAYS, JJ., not participating.