**MERCHANTS COMMERCIAL BANK, Plaintiff**

**v.**

**OCEANSIDE VILLAGE, INC., JUAN CARLOS CACCIAMANI, JUAN FRANCISCO FUENTES, and CUBICA GROUP, LLLP, JOSE A. MARIN VARGAS, and HEAVY MATERIALS, LLC, Defendants**

**OCEANSIDE VILLAGE, INC., JUAN CARLOS CACCIAMANI, JUAN FRANCISCO FUENTES, and CUBICA GROUP, LLLP, Counter Plaintiffs**

**v.**

**MERCHANTS COMMERCIAL BANK, Counter Defendant**

Case No. ST-2011-CV-653

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 18, 2015

5

7

8

A. JENNINGS STONE, ESQ., BoltNagi, P.C., St. Thomas, USVI, *Attorney for Plaintiff/Counter Defendant*.

LEE J. ROHN, ESQ., Lee J. Rohn and Associates, LLC, Christiansted, USVI, *Attorney for Defendants/Counter Plaintiffs Oceanside Village, Inc., Juan Carlos Cacciamani, Juan Francisco Fuentes, and Cubica Group, LLLP*.

FRANCOIS, *Judge*

## MEMORANDUM OPINION

(December 18, 2015)

Before the Court is a Motion for Leave to File Second Amended Counterclaim (the "Motion"), which was filed on July 22, 2015 by Defendants Oceanside Village, Inc., Juan Carlos Cacciamani, Juan Francisco Fuentes, and Cubica Group, LLLP (collectively, "Defendants"). Plaintiff filed a response in opposition to Defendants' Motion on August 5, 2015, and Defendants filed a reply on September 2, 2015. The Court discerns no bad faith or dilatory motive behind Defendants' Motion, but one of the counts of Defendants' proposed Counterclaim is futile.

9

Therefore, Defendants' Motion will be granted in part, and Defendants will be permitted to amend their Counterclaim to include only those claims identified below that are not futile.

## BACKGROUND

This case concerns an alleged breach of a loan agreement entered into between Plaintiff and Defendant Oceanside Village, Inc. On January 29, 2015, Defendants' former counsel was granted leave to withdraw. Defendants, through their new attorney, moved to amend their Answer and to plead counterclaims that had been improperly categorized as affirmative defenses in their original Answer. The Court granted Defendants permission to amend, and on May 6, 2015, Defendants filed their Amended Answer to Amended Complaint and Counterclaim (Defendants' "Amended Answer").

Plaintiff then moved to dismiss the counterclaims asserted in Defendants' Amended Answer. Instead of responding to Plaintiff's Motion to Dismiss, Defendants filed the Motion now before the Court. In their Motion, Defendants allege that their proposed amendments "clarify the dates and circumstances of events that support the Counterclaims against [Plaintiff]."[1] Defendants further allege that their Motion should be granted "as there is no prejudice to [Plaintiff], no evidence of bad faith or dilatory motive and the claims are not futile."[2] Defendants claim that they "are not adding any new claims and are merely clarifying their allegations in response to [Plaintiff's] request for a more definite statement in its Motion to Dismiss Counterclaim, filed May 18, 2015[.]" Defendants state that their Motion "address[es] the deficiencies noted by [Plaintiff] in its motion, making [Plaintiff's Motion to Dismiss] moot."[3]

## STANDARD FOR AMENDMENT

■ Rule 8 of the Superior Court permits the Court to "amend any process or pleading for any omission or defect therein." Because Rule 8 "merely states the general rule that a court can correct errors or defects in pleadings," the Court looks to the standards set out under Federal Rule of

---

[1] Defs.' Mot. for Leave to File 2d Am. Countercl. 1.

[2] *Id.* at 2.

[3] *Id.*

Civil Procedure 15 for guidance.[4] Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." A motion to amend may be denied for "reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[5]

## ANALYSIS

Plaintiff argues that Defendants' Motion should be denied because Defendants' proposed amendments are futile.[6] "In determining whether an amendment would be futile, the court considers whether it would survive a motion to dismiss."[7] To determine whether Defendants' proposed amendments would survive a motion to dismiss, the Court must identify the elements of each cause of action alleged, assume the truth of all well-pled factual allegations, and based on that information, determine whether each claim is plausible.[8] Applying this standard, Counts I, II, and IV through VI of Defendants' proposed amendments are plausible, and are therefore not futile. Count III, however, would not survive a motion to dismiss, and is therefore futile.

### I. COUNT I OF DEFENDANTS' PROPOSED AMENDED COUNTERCLAIM

Defendants allege that Plaintiff "breached the loan agreement"[9] and that Defendants "have suffered damages"[10] as a result.

---

[4] *Brooks v. Government of the Virgin Islands, Department of Education*, 58 V.I. 417, 427 n.11 (V.I. 2013).

[5] *Mountaintop Limited Partnership v. Columbian Emeralds International, Inc.*, 43 V.I. 193, 204 (V.I. Super. Ct. 2001) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

[6] Pl.'s Opp. to Defs.' Mot. for Leave to File 2d Am. Countercl. 1.

[7] *Adams v. N.W. Co. Int'l*, 63 V.I. 427, 453 (V.I. Super. Ct. 2015) (quoting *Jones v. L.S. Holdings, Inc.*, 2010 V.I. LEXIS 10, at *3 (V.I. Super. Ct. Feb. 25, 2010)) (internal quotations omitted).

[8] *Brady v. Cintron*, 55 V.I. 802, 823 (V.I. 2011) (quoting *Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (V.I. 2011).

[9] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, ¶ 60.

[10] *Id.* ¶ 61.

### a. Previous opinions issued by the Supreme Court of the Virgin Islands concerning breach-of-contract claims are not controlling.

■■ The common law of this jurisdiction has undergone a significant transformation since the Supreme Court of the Virgin Islands issued its opinion in *Banks v. International Rental & Leasing Corp.*[11] In *Banks*, the Supreme Court observed that, by vesting the supreme judicial authority in the Supreme Court of the Virgin Islands, the Legislature of the Virgin Islands implicitly repealed V.I. CODE ANN. tit 1 § 4.[12] Because courts could no longer derive principles of common law through rote application of the Restatements of the Law as mandated by 1 V.I.C. § 4, the Supreme Court provided a framework for determining the appropriate rule of law. This framework applies to every court called upon to determine a question of Virgin Islands law, including the Supreme Court itself.

The Supreme Court has observed that,

> [i]n addressing issues of Virgin Islands common law, this Court — and courts addressing issues of Virgin Islands common law that this Court has yet to address — must engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands.[13]

■ The Superior Court commits reversible error when it applies a rule of law that the Supreme Court has not established through the application of this three part test.[14] Therefore, if the Supreme Court recites a common law proposition without first subjecting same to a *Banks* analysis, the Superior Court may not rely on that case as conclusive authority for a proposition of law.

---

[11] 55 V.I. 967 (V.I. 2011).

[12] *Id.* at 979.

[13] *Better Building Maintenance of the Virgin Islands, Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014) (citations omitted).

[14] *See King v. Appleton*, 61 V.I. 339, 349 (V.I. 2014) (explaining that, "because [the Supreme Court] has yet to determine the elements of an express trust at common law under the appropriate analysis, the Superior Court erred in applying a common law rule without examining the *Banks* factors").

Two opinions from the Supreme Court illustrate such a scenario. The first, *Chapman v. Cornwall*,[15] was issued by the Supreme Court in 2013. In *Chapman*, the Supreme Court recites the elements for a breach-of-contract claim.[16] However the Supreme Court does not derive these elements from the three-part *Banks* analysis. Instead the Supreme Court cites to an opinion it issued in 2009,[17] which opinion in turn cites to the Restatement (Second) of Contracts.[18] Nowhere in *Chapman* does the Supreme Court consider the past approaches taken by courts in this jurisdiction alongside approaches taken by other jurisdictions in order to determine whether the rule of law it applies is, in fact, the soundest rule of law for the Virgin Islands: *Chapman* recites the elements for a breach-of-contract claim without deriving same from the *Banks* test. Therefore, *Chapman*'s statement of law is not authoritative on the elements of a breach-of-contract claim.

The Supreme Court repeats the same analysis in the more recent case of *Brouillard v. DLJ Mortgage Capital, Inc.*[19] In *Brouillard*, as in *Chapman*, the Supreme Court cites to the same opinion it issued in 2009, which opinion in turn derives its rule of law from the Restatement (Second) of Contracts. Like *Chapman*, *Brouillard*'s statement of the law cannot be authoritative on the elements of a breach-of-contract claim because it was not derived from a *Banks* analysis.

By citing to prior opinions that were derived from the mechanistic application of the Restatements of the Law without additional analysis, a court perpetuates the principles of law summarized in the Restatements without first determining whether those principles represent the soundest rules of law for the Virgin Islands. As *Banks* and its progeny make clear, such practices undercut the Supreme Court's status as the supreme judicial authority in this territory and impermissibly delegate judicial authority to the American Law Institute.

---

[15] 58 V.I. 431 (V.I. 2013).

[16] *Id.* at 437 (citing *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009)).

[17] *Id.* (citing *Arlington Funding Servs., Inc.*, 51 V.I. at 135).

[18] *Arlington Funding Servs., Inc.*, 51 V.I. at 135 (citing RESTATEMENT (SECOND) OF CONTRACTS § 235).

[19] 63 V.I. 788 (V.I. 2015).

## b. The soundest rule of law for the Virgin Islands is the rule set forth by the Supreme Court of the Virgin Islands in *Chapman v. Cornwall.*

 Because this Court cannot apply the principles of law set forth in *Chapman* and *Brouillard* without perpetuating the mechanistic · application of the Restatement (Second) of Contracts, this Court must conduct the three-pronged analysis mandated by *Banks*. This Court's task is greatly simplified by the near-uniform treatment of this cause of action. Courts in this jurisdiction have historically relied on the principles of law summarized in the RESTATEMENT (SECOND) OF CONTRACTS, Section 235. In doing so, courts in this jurisdiction have stated that, "[t]o establish a breach of contract claim, [a party] must prove that a contract existed, that there was a duty created by that contract, that such duty was breached, and that [the party] suffered damages as a result."[20] Slight variations exist in how the elements for this cause of action are stated in other jurisdictions.[21] However, like the courts of this jurisdiction, courts in other jurisdictions uniformly require proof of a contract, proof of a breach, and proof of damages.[22] Given that a plaintiff in the Virgin Islands has had to prove the same elements for a breach-of-contract claim that it would have to prove in any other jurisdiction in the United States, the soundest rule for the Virgin Islands is to perpetuate the rule stated by the Supreme Court of the Virgin Islands in *Chapman v. Cornwall*, having now subjected same to a *Banks* analysis. Therefore, to establish a breach-of-contract claim, a party must plead that a contract existed, that there was

---

[20] *Chapman*, 58 V.I. at 437.

[21] *See, e.g., Green v. Trinity International University*, 344 Ill. App. 3d 1079, 801 N.E.2d 1208, 1213 (2003) (requiring a plaintiff to prove offer and acceptance, consideration, and the existence of definite and certain contractual terms); *Magnusson Agency v. Public Entity National Company-Midwest*, 560 N.W.2d 20, 25 (Iowa 1997) (requiring that a plaintiff prove capacity to contract); *Saari v. George C. Dates & Associates*, 19 N.W.2d 121, 122-23 (Mich. 1945) (requiring that a plaintiff prove that it performed any applicable conditions precedent to defendant's performance).

[22] *E.g., Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, 436 S.W.3d 445, 450 (2014); *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *Camino Real Mobile Home Park Partnership v. Wolfe*, 1995-NMSC-013, ¶ 27, 119 N.M. 436, 445, 891 P.2d 1190, 1199; *Weitzel v. Sioux Valley Heart Partners*, 2006 SD 45, ¶ 31, 714 N.W.2d 884, 894; *Brew City Redevelopment Group, LLC v. Ferchill Group*, 2006 WI App. 39, ¶ 11, 289 Wis. 2d 795, 807, 714 N.W.2d 582, 588.

a duty created by that contract, that such duty was breached, and that the party suffered damages as a result.

### c. The putative breach-of-contract claim in Count I of Defendants' proposed amended Counterclaim not futile.

■ Defendants have pleaded the elements identified above. Defendants have alleged the existence of a contract in the form of the loan agreement,[23] and have alleged, among other things, that Plaintiff agreed to increase the amount of the loan by the amount of certain charge orders that became necessary in order to add certain infrastructure items.[24] Defendants have also alleged that Plaintiff breached its obligation to make timely payments of these charge orders, and ultimately stopped funding the loan.[25] Finally, Defendants have alleged that they incurred overages, add-on fees, late fees, and penalties as a result of Plaintiff's alleged breaches,[26] and ultimately "lost the ability to . . . earn a profit on the project[.]"[27] Defendants have therefore pleaded the elements of a claim for breach of contract.

■ In opposition, Plaintiff argues that the statute of limitations prevents Defendants from litigating this claim. Plaintiff is incorrect. The claims set forth in Defendants' proposed amendments relate back to the claims set forth in Defendants' Answer to Amended Complaint, which was filed on April 24, 2013. Actions upon a contract have a six-year limitations period.[28] Defendants allege that they received a loan commitment letter from Plaintiff on April 27, 2007,[29] and that the loan closed on June 29, 2007.[30] These dates — and consequently all other conduct concerning the loan agreement — fall within the six-year limitations period for contract claims. The statute of limitations does not bar Defendants' action for

---

[23] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, ¶ 10.

[24] Id. ¶¶ 17-18.

[25] Id. ¶¶ 19-23, 29.

[26] Id. ¶¶ 24, 38.

[27] Id. ¶ 57.

[28] 5 V.I.C. § 31(3)(A).

[29] Defs.' Mot for Leave to File 2d Am. Countercl. Ex. 2, ¶ 9.

[30] Id. ¶ 13.

breach of the loan agreement, and therefore, Count I of Defendants' proposed amended Counterclaim is not futile.

## II. COUNT II OF DEFENDANTS' PROPOSED AMENDED COUNTERCLAIM

 In Count II of their proposed amended Counterclaim, Defendants allege that Plaintiff "engaged in fraud, negligent, and intentional misrepresentations."[31] "Fraud" is defined as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."[32] In the Virgin Islands, this principle expresses itself as a cause of action for fraudulent misrepresentation.[33] Therefore, Count II of Defendants' Counterclaim purports to state claims for claims for fraudulent misrepresentation and negligent misrepresentation.

### a. Fraudulent misrepresentation

In this jurisdiction, defendants have been found liable for fraudulent misrepresentation when they "fraudulently make[ ] a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it," and the other justifiably relies on the misrepresentation to his or her detriment.[34] The Supreme Court of the Virgin Islands has not issued an opinion defining the elements of fraudulent misrepresentation under the framework mandated by *Banks*. Thus, before this Court can determine whether Defendants have stated a plausible claim for fraudulent misrepresentation against Plaintiff, the Court must undertake the three-part analysis set forth in *Banks*.[35]

### i. *Defining fraudulent misrepresentation pursuant to Banks*

In order to determine the rule of law governing Defendants' fraudulent misrepresentation claim, *Banks* obligates the Court to consider: (1) past approaches taken by courts in this jurisdiction; (2) approaches taken by

---

[31] *Id.* ¶ 63.

[32] BLACK'S LAW DICTIONARY 731 (9th ed. 2009).

[33] *See Isaac v. Crichlow*, 63 V.I. 38, 57 n.8 (V.I. Super. Ct. 2015) (analyzing claims for "misrepresentation" and for "fraud" as claims for "fraudulent misrepresentation").

[34] RESTATEMENT (SECOND) OF TORTS § 525.

[35] 55 V.I. 967 (V.I. 2011).

16

other jurisdictions; and most importantly (3) the soundest rule of law for the Virgin Islands.[36]

### 1. Approaches taken by courts in this jurisdiction

While sitting as the de facto court of last resort for this Territory, the United States Court of Appeals for the Third Circuit has stated that

> one who fraudulently makes a misrepresentation of fact . . . for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.[37]

In defining the tort of fraudulent misrepresentation in this manner, the Third Circuit cited Section 525 of the RESTATEMENT (SECOND) OF TORTS, as it was required to do at the time under 1 V.I.C. § 4.

In 2013, the Supreme Court of the Virgin Islands issued an opinion in which the elements of fraudulent misrepresentation were recited.[38] The Supreme Court stated that a party will be liable for fraudulent misrepresentation if the plaintiff can prove that the defendant intended his assertion to induce the plaintiff to manifest his assent, and the defendant

> knows or believes that the assertion is not in accord with the facts, or . . . does not have the confidence that he states or implies in the truth of the assertion, or . . . . knows that he does not have the basis that he states or implies for that assertion.[39]

Without conducting a *Banks* analysis to determine whether its statement of law represented the soundest rule for the Virgin Islands, the Supreme Court copied its definition of fraudulent misrepresentation from the RESTATEMENT (SECOND) OF CONTRACTS, Section 162, stating that "Restatements of the Law may apply to the Virgin islands through 1 V.I.C.

---

[36] *King v. Appleton*, 61 V.I. 339, 349 (V.I. 2014) (citing *Better Building Maintenance of the Virgin Islands, Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014)).

[37] *Island Insteel Systems v. Waters*, 296 F.3d 200, 212, 44 V.I. 389 (3d Cir. 2002) (citing RESTATEMENT (SECOND) OF TORTS § 525)).

[38] *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455 (V.I. 2013).

[39] *Id.* at 471 (citing RESTATEMENT (SECOND) OF CONTRACTS § 162).

§ 4 subject to the authority of this court . . . to shape the common law of the Territory."[40]

More recently, in the case of *Isaac v. Crichlow*,[41] the Superior Court of the Virgin Islands, Molloy, J., adopted the definition of fraudulent misrepresentation contained in the RESTATEMENT (SECOND) OF TORTS, Section 525.[42] Unlike the Supreme Court, however, the Superior Court conducted a *Banks* analysis before concluding that the principles of law summarized in Section 525 represented the soundest rule of law for the Virgin Islands.[43] The Superior Court's analysis consisted of "a review of the case citations listed in [Section 525]."[44] Those citations led the Superior Court to conclude that "at least twenty-six states have a rule derived for, or similar to, the rule established by [Section 525]," and consequently, that the principles stated in Section 525 represented the soundest rule of law for the Virgin Islands.[45]

### 2. Approaches taken by other jurisdictions

In defining the tort of fraudulent misrepresentation, other jurisdictions focus on six elements: a misrepresentation; the defendant's knowledge of the misrepresentation; the intent of the defendant; the reliance by the plaintiff; the knowledge of the plaintiff; and the damages suffered by the plaintiff. Although one jurisdiction utilizes an eleven-part test,[46] those eleven elements all fit into one of the six categories identified above. At least one jurisdiction defines fraudulent misrepresentation by statute.[47]

---

[40] *Id.* at 471 n.10.

[41] 63 V.I. 38 (V.I. Super. Ct. 2015).

[42] *Id.* at 61-62.

[43] *Id.* at 62-63.

[44] *Id.* at 62.

[45] *Id.* at 62.

[46] *See Florenzano v. Olson*, 387 N.W.2d 168, 174 n.4 (Minn. 1986) (setting *Davis v. Re-Trac Manufacturing Corp.*, 276 Minn. 116, 149 N.W.2d 37, 38-39 (1967) (stating the eleven-part test for fraudulent misrepresentation used in Minnesota).

[47] *See Black v. Richmond*, 2005 ND 145, ¶¶ 12-13, 701 N.W.2d 897, 901 (analyzing plaintiff's claim for fraudulent misrepresentation under N.D.C.C. § 9-03-08, the statute that defines actual fraud in North Dakota).

Concerning the element of misrepresentation, at least 47 jurisdictions require that the defendant make a misstatement of fact.[48] Of those 47 jurisdictions, at least 33 require that the misrepresented fact be material.[49] The remaining jurisdictions that do not explicitly require materiality provide no justification for this omission. Finally, some jurisdictions recognize that one can make an actionable misstatement through omission.

Concerning the defendant's knowledge, at least 40 jurisdictions require that the defendant's misrepresentation be made knowingly.[50] Jurisdictions vary over how the knowledge requirement is described. Some jurisdictions require that a defendant's misrepresentation be made "with

---

[48] *E.g., Nesbitt v. Frederick*, 941 So. 2d 950, 957 (Ala. 2002) (citing *Fisher v. Corner Plantation, Inc.*, 722 So. 2d 455, 463 (Ala. 2000)); *Anchorage Chrysler Center, Inc. v. Daimlerchrysler Corp.*, 129 P.3d 905, 914 (Alaska 2006) (setting RESTATEMENT (SECOND) OF TORTS § 525 (1977)); *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900, 905 (1990) (citing *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 647 P.2d 629, 631 (1982)); *Janssen v. McKimmey*, 305 Ark. 360, 807 S.W.2d 920, 922 (1991) (citing *Brookside Village Mobile Homes v. Meyers*, 782 S.W.2d 365, 367 (Ark. 1990)); *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 172 Cal. Rptr. 3d 218, 228 (2014) (citing *Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 113 Cal. Rptr. 3d 790, 794 (2010)); *Nielson v. Scott*, 53 P.3d 777, 779-80 (Colo. Ct. App. 2002) (citing *M.D.C./Wood. Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994)); *Sturm v. Harb Development, LLC*, 298 Conn. 124, 2 A.3d 859, 871-72 (2010) (citing *Suffield Development Associates L.P. v. National Loan Investors, L.P.*, 802 A.2d 44, 51 (Conn. 2002)); *Masingill v. EMC Corp.*, 449 Mass. 532, 870 N.E.2d 81, 88 (2007) (quoting *Kilroy v. Barron*, 95 N.E.2d 190 (Mass. 1950)); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 944 N.E.2d 1104, 1108, 919 N.Y.S.2d 465 (2011) (quoting *Lama Holding Co. v Smith Barney Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)); *Richardson v. Hardin*, 5 P.3d 793, 797 (Wyo. 2000).

[49] *E.g., Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. 1981) (citations omitted); *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813, 815-16 (1976) (citations omitted); *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶¶ 11-12, 760 P.2d 174, 176-77 (citing *D & H Co., Inc. v. Shultz*, 1978 OK 71, 579 P.2d 821 (1978), *Heise v. Pilot Rock Lumber Co.*, 222 Ore. 78, 352 P.2d 1072, 1076 (1960) (quoting *Musgrave et ux. v. Lucas et ux.*, 238 P.2d 780, 784 (Or. 1951)); *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 690 S.E.2d 322, 359 n.6 (2009) (citing *Kidd v. Mull*, 215 W. Va. 151, 595 S.E.2d 308, 313 (2004)).

[50] *E.g., Brzoska v. Olson*, 668 A.2d 1355, 1367 (Del. 1995) (citing *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278, 284 (Del. Super. Ct. 1960)); *Deutz-Allis Credit Corp. v. Bakie Logging*, 121 Idaho 247, 824 P.2d 178, 182 (1992); *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1386 (1998) (citing *Lubbe v. Barba*, 91 Nev. 596, 540 P.2d 115, 117 (1975)); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (citing RESTATEMENT (SECOND) OF TORTS § 531 (1977)).

19

knowledge of its falsity or ignorance of the truth."[51] Others require that the defendant "knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion."[52] Still others require that the misrepresentation must be made "with knowledge of its falsity or in reckless disregard of whether it is true or false."[53] There is no clear majority position as to how the knowledge requirement is defined.

Concerning the defendant's intent, at least 38 jurisdictions require that the defendant intend that its misrepresentation will induce reliance by the plaintiff.[54] A small minority of jurisdictions do not explicitly require a plaintiff to prove this element.

In at least 47 jurisdictions, a plaintiff must rely on the defendant's misrepresentation in order to succeed on a claim for fraudulent misrepresentation.[55] Some jurisdictions require that the plaintiff's reliance be reasonable,[56] while others require that the plaintiff's reliance

---

[51] *E.g., Bank of Shaw v. Posey*, 573 So. 2d 1355, 1362 (Miss. 1990) (citing *Ezell v. Robbins*, 533 So. 2d 457, 461 (Miss. 1988)).

[52] *Crescent Grocery Co. v. Vick*, 194 Ky. 727, 240 S.W. 388, 389 (1922).

[53] *Maine Eye Care Associates, P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707, 711 (citing *Mariello v. Giguere*, 667 A.2d 588, 590 (Me. 1995)).

[54] *E.g., Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)); *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008) (citations omitted); *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns*, 2006-0974, 962 So. 2d 1089, 1091 (La. App. 4 Cir. 6/20/07); (quoting *Goodman v. Dell Publishing Co*, 1995 U.S. Dist. LEXIS 10275 (E.D. La. 1995)); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 810 A.2d 1045, 1053-54 (2002) (quoting *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534, 537 (1982)); *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285 A.2d 451, 454 (1971) (citing *Neuman v. Corn Exchange Nat. Bank and Trust Co.*, 356 Pa. 442, 450, 51 A. 2d 759, 763 (1947)); *Merten v. Nathan*, 108 Wis. 2d 205, 321 N.W.2d 173, 179 (1982) (quoting *Goerke v. Vojvodich*, 67 Wis. 2d 102, 226 N.W.2d 211, 214 (1975)).

[55] *E.g., Anchorage Chrysler Ctr., Inc. v. Daimlerchrysler Corp.*, 129 P.3d 905, 914 (Alaska 2006) (citing RESTATEMENT (SECOND) OF TORTS § 525 (1977)); *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 172 Cal. Rptr. 3d 218, 228 (2014) (quoting *Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 113 Cal. Rptr. 3d 790, 796 (2010)); *Doe*, 888 N.E.2d at 35-36 (citations omitted): *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (quoting *Lama Holding Co. v Smith Barney Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)); *Women's Dev. Corp. v. City of Cent. Falls*, 764 A.2d 151, 161 (R.I. 2001).

[56] *See, e.g., Masingill v. EMC Corp.*, 449 Mass. 532, 870 N.E.2d 81, 88 (2007) (citing *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 781 N.E.2d 787, 795 (2003) (stating that "reliance by the plaintiff must be reasonable")).

be justified.[57] It is unclear whether reasonable reliance or justifiable reliance constitutes the majority position, but in examining the related case law, there appears to be no meaningful distinction between the adjectives 'reasonable' and 'justified.' Fewer jurisdictions only require that a plaintiff prove reliance. Finally, at least one jurisdiction requires that a plaintiff prove both that it relied on the defendant's misrepresentation, and that the plaintiff had a right to rely on the defendant's misrepresentation.[58]

Twelve of the 54 jurisdictions surveyed required that a plaintiff prove that it had no knowledge of the falsity of defendant's misrepresentation.[59]

At least 43 jurisdictions specifically require that a plaintiff prove damages as a result of its reliance on a defendant's misrepresentation.[60] Among the jurisdictions that do not list damages as an element of a common-law action for fraudulent misrepresentation, none explained the omission of such a requirement.

### 3. The soundest rule of law for the Virgin Islands

The soundest rule of law for the Virgin Islands is as follows: One who makes a misrepresentation of fact, opinion, intention, or law that he or she either knew or had reason to know was false, and that was made for the purpose of inducing another to act or refrain from acting on it, is

---

[57] *See, e.g., Van Der Stok v. Van Voorhees*, 151 N.H. 679, 866 A.2d 972, 975 (2005) (requiring that a plaintiff "demonstrate justifiable reliance").

[58] *Heise v. Pilot Rock Lumber Co.*, 222 Ore. 78, 352 P.2d 1072, 1076 (1960).

[59] *E.g., Deutz-Allis Credit Corp. v. Bakie Logging*, 121 Idaho 247, 824 P.2d 178, 182 (1992); *Clark v. Olson*, 726 S.W.2d 718, 719 (1987); *State v. Bolyn*, 143 S.C. 63, 141 S.E. 165, 173 (1928).

[60] *E.g., Nesbitt v. Frederick*, 941 So. 2d 950, 957 (Ala. 2006) (quoting *Moore v. Prudential Residential Services Limited Partnership*, 849 So. 2d 914, 923 (Ala. 2002)); *Janssen v. McKimmey*, 305 Ark. 360, 807 S.W.2d 920, 922 (1991) (citing *Brookside Village Mobile Homes v. Meyers*, 301 Ark. 139, 782 S.W.2d 365, 367 (1990)); *Perlas*, 113 Cal. Rptr. 3d at 796; *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994) (citations omitted); *Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009) (citations omitted); *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.4 (Minn. 1986) (citations omitted); *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813, 816 (1997) (citations omitted); *Schillaci v. First Fidelity Bank*, 311 N.J. Super. 396, 709 A.2d 1375, 1379 (1998) (citing *Jewish Ctr. v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981)); *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (citations omitted); *In re Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401, 415-16, 35 A.3d 950, 960-61.

subject to liability to the other for pecuniary loss caused by the other's justifiable reliance on the misrepresentation.

The language of this rule closely approximates the definition adopted by the Superior Court in *Isaac v. Crichlow*. However, the language from Section 525 adopted by *Crichlow* is problematic because, when read by itself, Section 525's definition of the tort of fraudulent misrepresentation is circular. Under Section 525, a defendant is liable for fraudulent misrepresentation if he "fraudulently makes a misrepresentation . . . ." The drafters of Section 525 realized that Section 525 could not stand alone as a rule of law; comment a to Section 525 explains that "the rules that determine the fraudulent character of a misrepresentation are stated in §§ 526-530."[61] Thus, liability under Section 525 can only be made with reference to additional sections of the Restatement. Yet *Crichlow* did not subject these sections to the three-part *Banks* analysis.

The definition of fraudulent misrepresentation adopted in *Crichlow* is consistent with the definition employed by other jurisdictions. Any differences in the definition of this tort across jurisdictions appear in the wording of the tort's elements, not the substance thereof. The principles of law summarized in Section 525 have long provided the rule of law for litigants in this jurisdiction. While this fact alone does not compel the adoption of Section 525's language, it militates in favor of patterning the soundest rule of law after the principles of law summarized in Section 525. Consequently, the rule adopted above only departs from the text of Section 525 in two ways: first, the requirement that a plaintiff's misrepresentation of fact, opinion, intention, or law be "fraudulent" has been removed, due to its circular nature. Second, the requirement that a defendant "knew or had reason to know" that his or her misrepresentation was false has been added. This requirement, along with the requirement that a defendant intend to induce the plaintiff's reliance through his or her misstatement, captures the essence of the term "fraudulent" as used in Section 525, and ensures that this Court is not altering the scope of liability for fraudulent misrepresentation that has existed for some time in this jurisdiction.

---

[61] RESTATEMENT (SECOND) OF TORTS § 525 cmt. a.

22

### ii. The putative fraudulent misrepresentation claim in Count II of Defendants' proposed amended Counterclaim is not futile.

■■■ Defendants have alleged that Plaintiff represented that Defendants only needed to borrow a total of $12.2 million at any given time through a revolving loan package in order to finance a portion of Defendants' construction project,[62] and that it would increase the amount of Defendants' loan if the initial loan amount proved to be inadequate.[63] Defendants allege that, once Plaintiff "began to take long periods of time to make payments due under the loan agreement,"[64] Plaintiff represented that it was interested in doing business with Defendants.[65] Defendants allege that, during this time, Plaintiff represented that Defendants "had to close on two more Units before more funds would be released."[66] Defendants claim that, after April of 2011, Plaintiff "took the position that all funds received from the sale of . . . 20 units would have to be paid to [Plaintiff] and no further revolving funds would ever be paid . . . ."[67] Defendants then allege that, after all of these representations, they "discovered that [Plaintiff] had no intention of trying to rectify the situation or to mitigate damages . . . ."[68] Defendants allege that Plaintiff knew or had reason to know that the $12.2 million figure was false because Plaintiff was a newly formed, inadequately-capitalized bank that could not legally make a loan of that size.[69] Defendants claim that they relied on Plaintiff's representations from the closing of the loan agreement through April of 2011.[70] Finally, as with Count I, Defendants alleged that they suffered pecuniary losses when Plaintiff refused and was unable to fund the full amount required by Defendants, thus depriving Defendants of the ability to complete their construction project and earn

---

[62] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, ¶ 9.

[63] *Id.* ¶ 10.

[64] *Id.* ¶ 21.

[65] *Id.* ¶¶ 25-26.

[66] *Id.* ¶ 28.

[67] *Id.* ¶ 34.

[68] *Id.* ¶ 46.

[69] *Id.* ¶ 8.

[70] *Id.* ¶¶ 13, 15.

a profit therefrom.[71] Therefore, Defendants have pleaded the elements of a claim for fraudulent misrepresentation.

Plaintiff argues that Defendants' fraudulent misrepresentation claim must be dismissed because it does not comport with the requirement that a claim for fraud must be pled with specificity as to the date, time, and place of the alleged fraud.[72] Plaintiff derives this requirement from other opinions issued by the Superior Court, which in turn derive their requirements from Federal Rule of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) states that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud . . . ." Nothing in the text of Rule 9(b) obligates a pleader to set forth the exact time and location of an alleged fraud. While some opinions from the Superior Court have required a pleader to "set forth the date, time, and place of the alleged fraud or misrepresentation,"[73] other opinions have stated that a pleader who does not set forth the date, time, and place of the alleged act must "otherwise inject precision or some measure of substantiation into a fraud allegation."[74]

Federal interpretations of Rule 9(b) are persuasive to this Court's analysis. The United States Court of Appeals for the Third Circuit has stated that the purpose of Rule 9(b) "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[75] The Third Circuit has also observed that "allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."[76] This Court agrees with the Third Circuit's observations.

Here, Defendants have satisfied the particularity requirement by identifying the dates on which the representations were made.

---

[71] *Id.* ¶ 57.

[72] Pl.'s Opp. to Defs.' Mot. for Leave to File 2d Am. Countercl. 9-12.

[73] *E.g., Benjamin v. Bennerson*, Case No. ST-11-CV-220, 2012 V.I. LEXIS 7, at *5 (V.I. Super. Ct. Feb. 13, 2012).

[74] *E.g., Ringo v. Southland Gaming of the United States V.I., Inc.*, Case No . ST-10-CV-116, 2010 V.I. LEXIS 62, at **9-10 (V.I. Super. Ct. Sept. 22, 2010).

[75] *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[76] *Id.*

Specifically, Defendants indicate that the alleged misrepresentations concerning Plaintiff's lending limit and the sufficiency of the loan amount were made in Plaintiff's April 27, 2007 commitment letter.[77] It follows that Plaintiff's alleged misrepresentations concerning the sufficiency of the loan amount were reaffirmed by each of the alleged amendments to the loan agreement, which Defendants allege occurred on October 10, 2007 and March 25, 2008, respectively.[78] Based upon these allegations, the Court is convinced that Plaintiff has been put on notice "of the precise misconduct with which [it has been] charged."[79]

 Plaintiff has also alleged that the statute of limitations bars Defendants' proposed fraudulent misrepresentation claim. The limitations period for claims of misrepresentation is two years, and begins to run at the time the fraud was or should have been discovered.[80] As mentioned above, Defendants' proposed amendments relate back to their Answer to Amended Complaint, which was filed on April 24, 2013. Since Defendants have alleged that they discovered the allegedly-fraudulent nature of Plaintiff's representations sometime after April of 2011, Defendants' putative misrepresentation claims fall within the applicable limitations period.[81] Therefore, Defendants' putative fraudulent misrepresentation claim is not futile.

### b. Negligent misrepresentation

The Supreme Court of the Virgin Islands has not issued an opinion that defines this cause of action under the *Banks* framework. Before the Court can determine whether Defendants' putative negligent misrepresentation claim would survive a motion to dismiss, the Court must determine the soundest rule of law pertaining to claims for negligent misrepresentation.

### i. *Defining negligent misrepresentation pursuant to Banks*

*Banks* obligates the Court to consider: (1) past approaches taken by courts in this jurisdiction; (2) approaches taken by other jurisdictions; and

---

[77] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, ¶ 9.

[78] *Id.* ¶¶ 12, 15.

[79] *Seville Industrial Machinery Corp.*, 742 F.2d at 791.

[80] *Martin v. Martin*, 54 V.I. 379, 390-91 (V.I. 2010) (citations omitted).

[81] *See* 5 V.I.C. § 32(c) ("In an action upon . . . fraud . . . the limitation shall be deemed to commence only from . . . the discovery of the fraud . . . ."). *See also Martin*, 54 V.I. at 391 (citing 5 V.I.C. § 32(c) for the same proposition).

most importantly (3) the soundest rule of law for the Virgin Islands in order to determine the parameters for a claim of negligent misrepresentation.[82]

### 1. Approaches taken by courts in this jurisdiction

When addressing claims of negligent misrepresentation, courts in the Virgin Islands have looked to the RESTATEMENT (SECOND) OF TORTS, Section 552 either directly, or by citing to earlier cases that relied on Section 552. This is true for opinions from both the Supreme Court and the Superior Court. In these opinions, no court has undertaken the three-part *Banks* analysis to determine the soundest rule for the Virgin Islands.

### 2. Approaches taken by other jurisdictions

Other jurisdictions define negligent misrepresentation by considering the defendant's misrepresentation; the plaintiff's reliance on that representation; and the damages suffered by the plaintiff. Many jurisdictions also consider the context in which the representation was made, and the degree of care exercised in making the representation.

At least ten jurisdictions require that a plaintiff prove that the defendant's misrepresentation of fact be material.[83] At least 33 jurisdictions require that the representation be false.[84] Of those 33 jurisdictions, four require that the misrepresentation also be material. In the cases reviewed, no justification was provided as to why some jurisdictions require representations to be material, while others do not.

As with claims for fraudulent misrepresentation, the plaintiff's reliance is a crucial element of a claim for negligent misrepresentation. At least 43 jurisdictions require that the plaintiff prove that it relied on the

---

[82] *King v. Appleton*, 61 V.I. 339, 349 (V.I. 2014) (citing *Better Building Maintenance of the Virgin Islands, Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014)).

[83] *E.g., Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999); *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 546 N.E.2d 580, 591 (1989); *Mallette v. Children's Friend & Serv.*, 661 A.2d 67, 69-70 (R.I. 1995).

[84] *E.g., Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 11 Cal. Rptr. 2d 51, 834 P.2d 745, 768 (1992); *M.H. & J. v. Caritas Family Servs.*, 488 N.W.2d 282, 287 (Minn. 1992); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997); *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 288 N.W.2d 95, 99 (1980).

defendant's misrepresentation.[85] Depending on the jurisdiction, reliance must be either reasonable or justifiable, although no distinction appears to exist between these terms.

At least 30 jurisdictions require that a plaintiff prove injury of some sort. Of those 30 jurisdictions, 21 only allow recovery for pecuniary loss occasioned by a defendant's misrepresentation.[86] The remaining nine jurisdictions only state generally that a plaintiff must prove that it suffered damages.[87]

47 jurisdictions expressly require that a plaintiff demonstrate that the defendant breached some duty of care. 31 of those jurisdictions define that duty as a duty to "exercise reasonable care or competence in obtaining or communicating the information."[88] The remaining 16 jurisdictions variously describe the duty as a duty to "provide accurate information"[89] or a "duty to disclose."[90]

One of the ways in which claims for negligent misrepresentation have been distinguished from claims for fraudulent misrepresentation is that, in at least 27 jurisdictions, claims for negligent misrepresentation can only arise when the defendant has communicated information in the course of

---

[85] *E.g., Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 238 (Ala. 2014); *Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 670-71 (Alaska 2002); *Bily*, 834 P.2d at 768; *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003); *Blair v. Ing*, 95 Haw. 247, 21 P.3d 452, 474 (2001); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534, 539 (1982); *Kimmell v. Schaefer*, 89 N.Y.2d 257, 675 N.E.2d 450, 454, 652 N.Y.S.2d 715 (1996); *Onita Pacific Corp. v. Trustees of Bronson*, 315 Ore. 149, 843 P.2d 890, 894 n.5 (1992); *Esca Corp. v. KPMG Peat Marwick*, 135 Wn. 2d 820, 959 P.2d 651, 654 (1998).

[86] *E.g., Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas*, 267 Ga. 424, 479 S.E.2d 727, 729 (1997); *Wilkinson v. Shoney's, Inc.*, 269. Kan. 194, 4 P.3d 1149, 1165 (2000); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010); *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, 436 N.E.2d 212, 214 n.1 (1982); *Verschoor v. Mountain W. Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293, 1299 (Wyo. 1995).

[87] *E.g., Hemlani v. Flaherty*, 2003 Guam 17, ¶ 9; *Board of Education*, 546 N.E.2d at 591; *Agri Affiliates, Inc. v. Bones*, 265 Neb. 798, 660 N.W.2d 168, 174-75 (2003).

[88] *E.g., D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 520 A.2d 217, 223 (1987); *Mehaffy, Rider, Windholz & Wilson v. Central Bank, N.A.*, 892 P.2d 230, 236 (Colo. 1995); *Passmore v. Multi-Management Servs.*, 810 N.E.2d 1022, 1025 (Ind. 2004); *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580-82 (Ky. 2004); *Fox v. F & J Gattozzi Corp.*, 672 N.E.2d 547, 551 (Mass. App. Ct. 1996); *Levens v. Campbell*, 733 So. 2d 753, 762 (Miss. 1999); *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998); *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (1994).

[89] *E.g., H-M Wexford LLC*, 832 A.2d at 147 n.44.

[90] *E.g., Redmond*, 728 A.2d at 1207.

its business or concerning a transaction in which the defendant has a pecuniary interest.[91] Since a claim for negligent misrepresentation is premised on the negligence of the party transmitting the information, this requirement establishes circumstances under which a defendant would have a duty of care to transmit accurate information to another.

### 3. The soundest rule of law for the Virgin Islands

▮ The soundest rule of law for the Virgin Islands is that one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest, supplies false information for the guidance of others, is subject to liability for pecuniary loss caused to those others due to the others' justifiable reliance on the information, but only if he or she failed to exercise reasonable care or competence in obtaining or communicating the information. This rule incorporates the requirements imposed by nearly every jurisdiction in the United States. It also mirrors the language of the rule previously relied upon by courts in the Virgin Islands, and therefore fosters consistency concerning the scope of a defendant's liability.

#### ii. The putative negligent misrepresentation claim in Count II of Defendants' proposed amended Counterclaim is not futile

▮ Applying the standard adopted above, Defendants have stated a claim for negligent misrepresentation. Paragraphs six through ten, twelve, and thirteen established that Plaintiff was acting in the court of its business when it represented to Defendants its lending limits and the sufficiency thereof to cover Defendants' proposed construction project. Paragraphs ten, 47, and 64 allege that Defendants relied on Plaintiff's various alleged misrepresentations, and Paragraphs 37, 38, 43, 44, and 57 allege that Defendants suffered pecuniary harm as a result of their reliance on Plaintiff's representations. Finally, by alleging that Plaintiff "had a

---

[91] E.g., McAlister v. Citibank (Arizona), 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992); Gilchrist Timber Co. v. Itt Rayonier, 696 So. 2d 334, 337-38 (Fla. 1997); Eby v. York-Division, Borg-Warner, 455 N.E.2d 623, 628-29 (Ind. Ct. App. 1983); Fox, 672 N.E.2d at 551; Caritas Family Servs., 488 N.W.2d at 287; Western Sec. Bank v. Eide Bailly LLP, 2010 MT 291, ¶ 24, 359 Mont. 34, 39-40, 249 P.3d 35, 40 (2010); Haddon View Inv. Co., 436 N.E.2d at 214-15; McCamish v. F. E. Appling Interests, 991 S.W.2d 787, 791 (Tex.1999); Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc., 713 P.2d 55, 59 (Utah 1986).

duty to, but failed to, disclose" certain information to Defendants,[92] Defendants have satisfied the requirement of leading that Plaintiff failed to exercise reasonable care or competence in communicating the information at issue. And for the reasons discussed under the section pertaining to fraudulent misrepresentation, Defendants' negligent misrepresentation claim is not barred by the statute of limitations. Therefore, to the extent that Count II alleges negligent misrepresentation, such an allegation is not futile.

### III. COUNT III OF DEFENDANTS' PROPOSED AMENDED COUNTERCLAIM

■ Defendants allege that Plaintiff "breached its promises and representations as to the proper amount ·of the loan, its agreement to increase the loan, and its ability to fund the loan."[93] Defendants have placed both Plaintiff and the Court "in the untenable position of having to guess at what claim is being asserted,"[94] as it is unclear from the wording of Count III of the proposed amended .Counterclaim which claim or claims Defendants are attempting to assert. To the extent that Defendants are alleging that Plaintiff breached "its promise" and "its agreement to increase the loan," such allegations are subsumed under the breach-of-contract claim propounded under Count I of Defendants' proposed amendments. As to allegations that Plaintiff breached "representations as to the proper amount of the loan . . . and its ability to fund the loan," Defendants have propounded no theory of law to explain how one breaches a representation. Count III of Defendants' proposed amendments is not addressed anywhere in Defendants' Reply to Plaintiff's Opposition to Defendants' Motion. To the extent that Count III alleges that the "misrepresentations" referenced therein were untrue, such an allegation is subsumed under Defendants' misrepresentation theories set forth in Count II of Defendants' proposed amendments. Consequently, it is not clear that Count III of Defendants' proposed Counterclaim constitutes a cause of action distinct from those already alleged.

---

[92] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, at ¶ 8.

[93] *Id.* ¶ 68.

[94] *Benjamin v. Bennerson,* Case No. ST-11-CV-220, 2012 V.I. LEXIS 7, at *7 (V.I. Super. Ct. Feb. 13, 2012) (citing *Clement v. Pub. Serv. Elec. and Gas Co.,* 122 F. Supp. 2d 551, 552 (D.N.J. 2000)).

To the extent that Defendants maintain that Count III represents an independent basis for relief, they have propounded no argument to support such a claim. Therefore, the Court cannot conclude that Count III would survive a motion to dismiss, and Count III of Defendants' proposed Counterclaim is futile.

## IV. COUNT IV OF DEFENDANTS' PROPOSED AMENDED COUNTERCLAIM

Defendants allege that Plaintiff "tortuously interfered with [Defendants'] contracts with third parties and . . . took over the project and used illegally converted materials and loan funds without [Defendants'] authority on the project."[95] Based upon the context provided by Defendants' proposed amendments, Count IV purports to state two claims: one for tortious interference with existing contractual relations, and one for conversion.

### a. Defendants' putative claim for intentional interference with existing contractual relations is not futile.

■■■ The Supreme Court of the Virgin Islands has not issued an opinion that defines this cause of action. In *Donastorg v. Daily News Publishing Co., Inc.*,[96] the Superior Court, Francois, J., conducted the three-part *Banks* analysis and concluded that the soundest rule of law for the Virgin Islands is as follows:

> To prevail on a claim for intentional interference with existing contractual relations, a plaintiff in this jurisdiction must prove: (1) the existence of a contract between the plaintiff and a third party; (2) that the defendant knew of that contract; (3) that the defendant interfered with the contract using improper means or with an improper motive; and (4) that the plaintiff was damaged as a result.[97]

Having reviewed the *Banks* analysis conducted in *Donastorg*, this Court is satisfied with *Donastorg*'s reasoning and conclusion, and adopts its *Banks* analysis as though the same were set forth herein.

■■■ Defendants' proposed amendments contain factual allegations that satisfy the elements of a claim for intentional interference with

---

[95] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, at ¶ 71.
[96] 63 V.I. 196 (V.I. Super. Ct. 2015).
[97] *Id.* at 288.

existing contractual relations. Paragraph 22 references invoices and debts between Defendants and third parties, and thus constitutes allegations of contracts between Defendants and those parties. Plaintiff's knowledge of these contracts is alleged in the paragraphs pertaining to the nature of Defendants' work.[98] By alleging that Plaintiff was aware that Defendants were engaging in a construction project, it follows that Plaintiff was aware that Defendants would be contracting with third parties to supply materials and labor for the project's completion. Defendants allege that Plaintiff interfered with these contracts using an improper means or with an improper motive in paragraph 42, in which Defendants state that Plaintiff "was responsible for the demise of the Oceanside loan so [it] could have [an employee] promoted." Improper means are also alleged in paragraphs 55 through 57, in which Defendants allege that Plaintiff converted material belonging to Defendants, thereby prohibiting Defendants from working on other projects. Finally, in paragraph 57, Defendants allege that they suffered damages from Plaintiff's interference because Defendants were unable to complete and earn a profit on their construction projects. Furthermore, an action for intentional interference with existing contractual relations carries a two-year statute of limitations.[99] Since Plaintiff allegedly interfered with Defendants' other contractual obligations by converting Defendants' equipment in June of 2014, at least part of Defendants' claim for intentional interference with existing contractual relations falls within the applicable limitations period. Defendants' claim would survive a motion to dismiss, and is therefore not futile.

### b. Defendants' putative claim for conversion is not futile.

██ The Supreme Court of the Virgin Islands has not issued an opinion that defines this cause of action. In *Isaac v. Crichlow*,[100] the Superior Court conducted a *Banks* analysis and determined that the soundest rule of law for the Virgin Islands was to define conversion as

---

[98] *E.g.*, Defs.' Mot for Leave to File 2d Am. Countercl. Ex. 2, at ¶¶ 7, 12, 17, 19.
[99] 5 V.I.C. § 31(5).
[100] 63 V.I. 38 (2015).

31

an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.[101]

Having reviewed the authorities relied upon in *Crichlow*, this Court is satisfied with *Crichlow*'s reasoning and conclusion, and adopts its *Banks* analysis as though the same were set forth herein.

In paragraph 55 of Defendants' proposed amended Counterclaim, Defendants allege that, when a receiver was appointed over the Defendants' construction project, the receiver, "at the direction of [Plaintiff]," "misappropriated and took equipment and materials . . . owned by [Defendant Cubica Group, LLLP] that was [sic] on the job site and . . . refused to account for same." Such an allegation is sufficient to state a claim for conversion. Furthermore, Defendants allege that these actions occurred "[i]n or about June 2014," within the applicable limitations period.[102] Therefore, those portions of Count IV pertaining to Defendants' putative conversion claim are not futile.

## V. COUNT V OF DEFENDANTS' PROPOSED AMENDED COUNTERCLAIM

Defendants allege that Plaintiff "falsely and improperly and fraudulently demanded payment on a line of credit . . . which [Plaintiff] knew would and did cause [Defendants] to be in default on obligations it owned to First Bank with regard to an ongoing project in St. Croix causing that project to go into default."[103] In this jurisdiction, letters of credit are governed by Article 5 of the Uniform Commercial Code, as codified under Title 11A, Article 5 of the Virgin Islands Code. Under Article 5, "[a]n action to enforce a right or obligation arising under this article must be commenced within one year after the expiration date of the relevant letter of credit or one year after the cause of action accrues, whichever occurs later."[104] Plaintiff argues that this limitations period renders Count V of Defendants' Counterclaim futile. However, nothing in Defendants' Counterclaim indicates that Defendants are attempting to "enforce a right or obligation" arising under Title 11A, Article 5.

---

[101] *Id.* at 59 (quoting RESTATEMENT (SECOND) OF TORTS § 222A).
[102] The limitations period on a conversion claim is six years. 5 V.I.C. § 31(3)(D).
[103] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, at ¶ 75.
[104] 11A V.I.C. § 5-115.

32

 Rather, Defendants contend Count V represents a claim for unjust enrichment. According to the Supreme Court of the Virgin Islands,

> the elements of the unjust enrichment cause of action to require the plaintiff to prove (1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff.[105]

 In paragraph 37 of Defendants' proposed amended Counterclaim, Defendants allege that Plaintiff was enriched at their expense when Plaintiff executed on a letter of credit provided by Defendant Cubica Group, LLLP, and that Plaintiff knew and appreciated the benefit of doing same. Defendants have essentially alleged that this letter of credit would not have been called but for the alleged-misrepresentations committed by Plaintiff. In doing so, Defendants have alleged that the circumstances under which Plaintiff was enriched by executing on the letter of credit are such that equity and good conscience demand that Plaintiff return any benefit that it derived by executing on the letter of credit. The manner in which Defendants chronicle their allegations indicates that the letter of credit was called sometime between April 2011 and June 2011, thus placing the actionable conduct within the two-year limitations period for an unjust enrichment claim. Therefore, Defendants' unjust enrichment claim would survive a motion to dismiss, and is not futile.

## VI. COUNT VI OF DEFENDANTS' PROPOSED AMENDED COUNTERCLAIM

In the final count of Defendants' proposed amended Counterclaim, Defendants allege that Plaintiff "breached its duty of good faith and fair dealings."[106] Before determining whether Defendants have alleged a plausible breach of the implied covenant of good faith and fair dealing, the Court must again explain why certain opinions from the Supreme Court of the Virgin Islands are not dispositive of this issue.

---

[105] *Walters v. Walters*, 60 V.I. 768, 779-80 (V.I. 2014).
[106] Defs.' Mot. for Leave to File 2d Am. Countercl. Ex. 2, at ¶ 78.

### a. Previous opinions issued by the Supreme Court of the Virgin Islands concerning the implied covenant of good faith and fair dealing are not dispositive on the subject of good faith and fair dealing.

As with the elements for a breach-of-contract claim, the Supreme Court's opinion in *Chapman v. Cornwell* recites a standard for claims related to an alleged breach of the implied covenant of good faith and fair dealing. In *Chapman*, the Supreme Court cites directly to the RESTATEMENT (SECOND) OF CONTRACTS, Section 205, for the proposition that "the implied duty of good faith and fair dealing arises by implication through the existence of a contract itself." The Supreme Court continues by citing an opinion from the Appellate Division of the District Court of the Virgin Islands for the proposition that a successful claim for the breach of duty of good faith and fair dealing in the context of an employment relationship requires acts amounting to fraud or deceit on the part of the employer. The Appellate Division case cites older authorities from this jurisdiction, which authorities in turn derive their legal principles from Section 205 of the RESTATEMENT (SECOND) OF CONTRACTS. At no point subsequent to *Banks* has a court in this jurisdiction endeavored to set forth the soundest rule for the Virgin Islands as it pertains to alleged breaches of the implied covenant of good faith and fair dealing under the *Banks* framework.

### b. The implied covenant of good faith and fair dealing in the Virgin Islands

As with defining the elements of a breach-of-contract action, the Court's burden is light. Subject to few exceptions, a clear majority of jurisdictions recognize that, at common law, every contract contains an implied covenant of good faith and fair dealing.[107] As a covenant not explicitly bargained for by the parties, the covenant "is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise."[108] Rather,

---

[107] *See* Sandra Chutorian, Note, *Tort Remedies for Breach of Contract: The Expansion of Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing into the Commercial Realm*, 86 COLUM. L. REV. 337, 337 n.3 (1986) (colleeting cases).

[108] *Century Partners, LP v. Lesser Goldsmith Enterprises, Ltd.*, 2008 VT 40, ¶ 21, 184 Vt. 215, 224-25, 958 A.2d 627, 633-34. *See also* WILLISTON ON CONTRACTS § 38:15, at 494 n.16

the implied covenant recognizes that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement."[109] Therefore, a party breaches the implied covenant of good faith and fair dealing by taking actions that deprive another party of the benefits for which it had bargained. The soundest rule of law for the Virgin Islands is that allegations of same are sufficient to allege a plausible breach of said covenant.[110]

### c. Defendants have set forth a plausible theory that Plaintiff has breached the implied covenant of good faith and fair dealing.

 Defendants have pleaded facts that, when assumed to be true, establish that Plaintiff breached the implied covenant of good faith and fair dealing. Defendants' proposed amendments contain allegations that Plaintiff repeatedly failed to perform its obligations under the loan agreement by, among other things, misrepresenting its lending limits to Defendants,[111] failing to make timely payments under the loan agreement,[112] and ultimately, failing to fund the loan.[113] Defendants allege that they were deprived of the benefit of their agreement with Plaintiff because, "[b]y failing to increase the loan as promised, slowing down payments . . and refusing to communicate and mitigate the situation . . . [Plaintiff] . . . forced [Defendants] to accumulate interests and fees that further eroded the available funding for the housing

---

(collecting cases for the proposition that "the covenant of good faith and fair dealing [does not] obligate a party to take affirmative steps that are clearly not required by the contract").

[109] *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1036-37 (Cal. 1973). *Accord Chavers v. National Sec. Fire & Casualty Co.*, 405 So. 2d 1, 4 (Ala. 1981); *Walter v. Simmons*, 169 Ariz. 229, 818 P.2d 214, 221 (1991); *Murray v. Wells Fargo Home Mortgage*, 953 A.2d 308, 321 (D.C. 2008); *Idaho First Nat'l Bank v. Bliss Valley Foods*, 824 P.2d 841, 864 (Idaho 1991); *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 265 Neb. 133, 655 N.W.2d 390, 400 (2003); *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 150 P.3d 1147, 1154 (2007).

[110] This conclusion represents a floor for prospective plaintiffs. As the Supreme Court recognized in *Chapman*, certain contexts may require allegations of additional misfeasance. For purposes of Defendants' Motion, however, the Court is convinced that this standard is sufficient.

[111] Defs.' Mot. for Leave to File 2nd Am. Countercl. Ex. 2, ¶ 36.

[112] *Id.* ¶ 22.

[113] *E.g., id.* ¶¶ 29-30.

project."[114] Consequently, Defendants allege that "Oceanside lost the ability to complete the project and to earn a profit on the project[.]"[115] Assuming the truth of these allegations, it is plausible that Plaintiff breached the implied covenant of good faith and fair dealing. Further, as an alleged breach of a contractual provision, Defendants' claim falls within the six-year limitations period. Therefore, Count VI of Defendants' proposed amendments is not futile.

## CONCLUSION

Defendants may amend their Counterclaim to include Counts I, II, IV, V, and VI of their proposed amendments because leave to amend pleadings should be freely granted and said counts are not futile. However, Count III is futile due to its ambiguity. Therefore, Defendants will not be permitted to amend their Counterclaim to include the proposed Count III. Accordingly, Defendants' Motion will be granted in part and denied in part. An appropriate order shall follow.

---

[114] *Id.* ¶ 38.
[115] *Id.* ¶ 57.