IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
October 23, 2020
SX-2018-CV-00027
TAMARA CHARLES
CLERK OF THE COURT

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

STEADROY WILLIAMS, as ASSIGNEE of )
ELITE SECURITY AGENCY, INC., )
                  Plaintiff, )
       v. )
INTER-OCEAN INSURANCE AGENCY, INC., )
PRIME INSURANCE SYNDICATE, INC. and )
PRIME INSURANCE COMPANY, )
              Defendants. )

**CASE NO.: SX-18-CV-27**

ACTION FOR BREACH OF
CONTRACT, BREACH OF DUTY
OF GOOD FAITHAND FAIR
DEALING AND NEGLIGENCE

**2020 VI Super 89U**

## MEMORANDUM OPINION and ORDER

¶ 1    Before the Court is Defendants Prime Insurance Syndicate, Inc.'s and Prime Insurance Company's (jointly "Prime")[1] Rule 12(b)(6) Motion to Dismiss, filed April 24, 2018, converted by April 2, 2020 Order, pursuant to V.I. R. Civ. P. 12(d), to a Rule 56 motion for summary judgment to provide Plaintiff further reasonable opportunity to present all material pertinent to the Motion. Plaintiff's Opposition was filed June 22, 2018, was not supplemented following the April 2, 2020 Order, and Plaintiff's motion to further extend discovery deadlines is denied by separate Order entered herewith. Prime's Reply to Plaintiff's Opposition was filed June 27, 2018. Also before the Court is Defendant Inter-Ocean Insurance Agency Inc.'s ("Inter-Ocean") Motion for Summary Judgment filed May 11, 2018; Plaintiff's Opposition, filed on June 22, 2018; and Inter-Ocean's Reply, filed July 10, 2018. These Motions came on for oral argument September 22, 2020. For the reasons that follow, the Prime Defendants' converted Motion will be granted; Inter-Ocean's Motion will be granted, and Plaintiff's Complaint will be dismissed with prejudice as to all claims and all Defendants.

## BACKGROUND

¶ 2    The current action against Prime and Inter-Ocean follows a tort action brought by Plaintiff Steadroy Williams (SX-10-CV-140), seeking damages from Elite Security Agency, Inc. and others for an assault and battery allegedly committed against Plaintiff by Elite Security's employee Ramon Richardson on or about September 16, 2009 at a Virgin Islands Water and Power Authority

---

[1] Prime Insurance Syndicate, Inc. merged with and became a part of Prime Insurance Company on December 30, 2009. *See* Complaint, ¶ 7. All parties treat the Prime Defendants as one and the same entity.

facility where Plaintiff was employed. At the time of the incident, Elite was insured by Prime, as it had been since April 23, 2005, by a commercial liability policy issued and renewed annually through Inter-Ocean (General Liability Policy No. SP0904006 ("the Policy")).

¶ 3    On March 26, 2009, Elite Security applied through Inter-Ocean to renew liability insurance coverage for risks related to its security business. Inter-Ocean issued the Policy to Elite Security covering specified risks relating to the security business, based upon Elite's application describing the nature and operations of its business, effective for the period April 1, 2009 to April 1, 2010. Following the September 16, 2009 incident, Williams filed his Verified Complaint in SX-10-CV-140 on March 29, 2010, seeking damages in tort against Richardson, Elite Security and WAPA. Upon being served with process, Elite tendered the defense of the suit to its carrier, Prime, through Inter-Ocean. On April 30, 2010, Prime informed Elite Security that it would not defend the action or indemnify Elite against the claims, citing a lack of coverage under the Policy, which Prime stated explicitly excluded claims arising from assault and battery, including allegations of negligent hiring/training/supervision related to the alleged assault.

¶ 4    During the pendency of the tort litigation, with the coverage dispute unresolved, Plaintiff and Elite Security entered into a Consent Judgment and an Assignment and Agreement not to Execute. By the parties' agreements, Elite Security agreed to entry of judgment against it in favor of Williams in the amount of $100,000 and assigned to Plaintiff all of its rights against Prime and/or Inter-Ocean arising under the Policy, including the failure to fulfill good faith obligations to protect Elite from liability to Williams and to properly underwrite the Policy to indemnify Elite in the tort action. In exchange, Williams agreed that he would not execute on or otherwise seek satisfaction of the Consent Judgment from or against any assets of Elite, other than any and all rights Elite had against Prime and/or Inter-Ocean.[2]

---

[2] The Court takes judicial notice of the records of the Superior Court in SX-10-CV-140. The Consent Judgment in favor of Plaintiff Williams against Elite was entered July 14, 2017. By Joint Stipulation, Order entered February 2, 2018 dismissing with prejudice Plaintiff's claims against WAPA. Default was entered against the sole remaining defendant, Ramon Richardson, on February 21, 2018. No substantive activity has occurred since, and Plaintiff's action against Defendant Richardson remains pending. Effective March 18, 2011, Elite filed its Verified First Amended Third-Party Complaint against Prime and Inter-Ocean and its principal, substantively comparable to Plaintiff's Complaint herein. Elite's subsequent motion to dismiss its third-party claims without prejudice was granted by Order entered December 4, 2017. Plaintiff's Complaint in this action seeking the same relief against Prime and Inter-Ocean was filed February 2, 2018.

¶ 5     Plaintiff Williams brings this action, as assignee of Elite Security, alleging by his Complaint the following causes of action against Defendants:

Count I:        Breach of Contract (Prime and Inter-Ocean)
Count II:       Breach of the Duty of Good Faith and Fair Dealing (Prime and Inter-Ocean)
Count III:      Negligence (Inter-Ocean)
Count IV:       Negligence (Prime)
Count V:        Failure to Defend or Indemnify (Prime)
Count VI:       Bad Faith (Prime and Inter-Ocean)
Count VII:      Fraud (Prime and Inter-Ocean)
Count VIII:     Negligent Misrepresentation (Prime and Inter-Ocean)
Count IX:       Estoppel (Prime and Inter-Ocean)

¶ 6     Plaintiff claims that as a result of Defendants' breaches, acts, omissions, bad faith and fraud, Elite Security was forced to enter into the Consent Judgment and has suffered compensable economic loses. As assignee of Elite's claims, Plaintiff alleges that Inter-Ocean and Prime failed to properly evaluate the risks and exposure to Elite, failed to provide an appropriate liability policy for Elite's business risks, and wrongly failed to defend and indemnify Elite in the tort action that presented claims that the Policy by its terms did in fact cover or, alternatively, from which Elite should have been protected had Defendants provided the coverage required and requested by Elite.

## STANDARD OF REVIEW

¶ 7     In evaluating motions for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). Such a dispute is genuine if it is material to the claim presented and a reasonable trier of fact could decide that factual issue in favor of the non-moving party. *Id.* at 391-92. "Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Williams*, 50 V.I. at 194 (internal citation omitted).

¶ 8     Reviewing Defendants' Motions, the Court does not weigh the credibility of the evidence offered. Instead, all inferences from the evidence are drawn in favor of the nonmoving party, and any conflicting allegations, if properly supported by the record, are resolved in favor of the

nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.,* 59 V.I. 522, 527 (V.I. 2013) (citing *Williams,* 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin,* 54 V.I. 379, 389 (V.I. 2010). If the "moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 391 (citation omitted). If the moving party does carry its initial burden to produce evidence of the absence of material facts in dispute, then "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman v. Cornwall,* 58 V.I. 431, 436 (V.I. 2013) (citations omitted).

¶ 9      "A party asserting that a fact... is genuinely disputed must... support the assertion by: (i) citing to particular parts of materials in the record...; or (ii) showing that the materials cited do not establish the absence... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.I. R. Civ. P. 56(c)(1). Although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere allegations and must present actual evidence showing a genuine issue for trial." *Machado,* 61 V.I. at 379. To determine whether summary judgment is appropriate, the Court must determine the substantive law governing the causes of action presented. *See Perez,* 59 V.I. at 528.

## DISCUSSION

¶ 10      The Motions of Prime and Inter-Ocean are treated in order, each addressing the Complaint's allegations set out in each Count against that Defendant.

### Prime's converted Motion for Summary Judgment

¶ 11      Count I: Breach of Contract.

In order to prevail on a claim of breach of contract under Virgin Islands law, a plaintiff must establish the existence of four elements: "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip v. Marsh-Monsanto,* 66 V.I. 612, 620 (V.I. 2017) (multiple citations omitted). To survive summary judgment, Plaintiff must point to evidence in the record by which a reasonable trier of fact could find in his favor as to each element of his breach of contract claim.

¶ 12    As Elite's assignee, Plaintiff alleges and Prime concedes the existence of an insurance contract between the parties. A copy of the Policy is attached as Exhibit 1 to Prime's Motion. The Complaint alleges that "Prime breached the contract of insurance by failing to honor the terms and conditions of that contract" in that, upon receipt of notice of the tort action, Prime "informed Elite Security that it would not defend or indemnify it against the claims..." Complaint, ¶¶ 19, 17.

¶ 13    To defeat summary judgment, Plaintiff must present evidence of a duty created under the Policy and breached by Prime. By its Motion, Prime contends that, Plaintiff's claims notwithstanding, the Policy imposed no duty to defend and indemnify Elite in the tort action. Section I. B. of the Policy is entitled "Exclusions," and states:

> This Policy does not cover, and we will not be obligated to defend you against or pay Damages on your behalf for any of the following: ...
>
> 7. Claims related to or arising out of actual or alleged assault and/or battery, whether caused by or at the direction of the Insured, the Insured's employees or patrons, or from any cause whatsoever. This Policy further excludes claims, accusations or charges of negligent hiring, placement, training, or supervision regarding any actual or alleged assault and battery. No coverage is provided for Claims alleging negligent hiring or entrustment, training or supervision, failure to provide adequate security, or other allegations of intentional, negligent, or reckless conduct related to actual or alleged assault and/or battery.

¶ 14    The Verified Complaint in the tort action, in the section entitled "Facts Giving Rise to Claim," alleges that "... defendant Ramon Richardson physically and brutally assault[ed] plaintiff by attacking plaintiff with his fist and punched plaintiff several times about the face causing plaintiff to fall to the floor." Complaint, Exhibit A, Verified Complaint ¶ 8 (SX-10-CV-140). Plaintiff claimed that he suffered serious physical, emotional and economic injuries "[a]s a direct and proximate result of defendants' attacks." *Id.* ¶ 10. Liability against Richardson is alleged for his "viciously assaulting Plaintiff without provocation." *Id.* ¶ 12. WAPA was alleged to be "negligent and careless in hiring defendant Elite Security..." as a result of which "Plaintiff suffered a vicious attack [] by defendant Ramon Richardson." *Id.* ¶¶ 14-15. WAPA, as Plaintiff's employer, is alleged to have breached its duty to provide a safe workplace by hiring Elite, as a result of which Plaintiff "suffered a vicious attack" and serious injuries. *Id.* ¶¶ 22-23. "Defendant Elite Security was negligent in the hiring, training, supervising and retaining of defendant Ramon Richardson," as a result of which Plaintiff "suffered a vicious attack" and resulting injuries. *Id.* ¶¶ 17-18.

¶ 15    Every insurance contract in the Virgin Islands is to be construed according to the entirety of the policy's terms and conditions. 22 V.I.C. § 846. "In the Virgin Islands, [t]he interpretation, construction and legal effect of an insurance policy is a question to be determined by the court *as a matter of law.*" *James v. Guardian Insurance Company*, 69 V.I. 26, 33 (V.I. Super. 2015) (citing *Certain Underwriters at Lloyds v. Robert Ellis Brown, Inc.*, 2013 U.S. Dist. LEXIS 3809 (D.V.I. 2013) (emphasis in original) (internal quotation omitted)). "If the terms of a policy are unambiguous, it must be construed according to its plain language." *Id., quoting Devcon Int'l Corp. v. Reliance Ins. Co.*, 2007 U.S. Dist. LEXIS 78672, at *8 (D.V.I. 2007).

¶ 16    The Court is to "read policies to avoid ambiguities and not to torture the language of the policy to create them." *General Star Indemnity Co v. Virgin Islands Port Authority*, 48 V.I. 696, 700 (D.V.I. 2007). By its terms, the Policy clearly, unambiguously and explicitly excludes from defense and coverage claims arising out of actual or alleged assault and/or battery, as well as negligent hiring, training, supervision or other intentional or negligent conduct related to an actual or alleged assault and/or battery.

¶ 17    By his Complaint in this action, Plaintiff asserts that Elite understood that it had obtained liability coverage "to protect it from all claims that foreseeably would arise from engaging in the business of a security company." Complaint, ¶ 12. In a case where the policy terms are ambiguous, the reasonable expectation of the insured relating to coverage may be a factor in determination of the scope of coverage. Thus, the burden is on Plaintiff, as assignee of the insured, Elite, to proffer a reasonable reading of the Policy terms demonstrating an ambiguity. Yet, Plaintiff has not alleged that the Policy language is ambiguous and has offered no explanation why the plain language of the Policy, excluding coverage for claims arising from assault, does not apply. Because the Policy unambiguously excluded coverage for all claims arising from or related to an actual or alleged assault and/or battery, there is no need to consider Elite's contrary expectations of coverage. *Devcon Int'l Corp. v. Reliance Ins. Co.*, 2007 U.S. Dist. LEXIS 84283, at *8-9 (D.V.I. 2007) (citations omitted).

¶ 18    While there existed a contract between Prime and Elite to provide liability coverage for various claims arising out of its business operations, there are no material facts in dispute to deny entry of judgment on this Count as a matter of law. The explicit language of the Policy excluded

coverage for claims arising from an assault, such that Prime had no duty to provide coverage for claims asserted in the tort action, and Prime's Motion will be granted as to Count I.

¶ 19    Count II: Breach of Duty of Good Faith and Fair Dealing.

By this Count, as to Prime, Plaintiff alleges simply that "Prime Defendants' conduct in failing to defend and/or indemnify Elite Security Agency, Inc. against the claims asserted by Plaintiff Steadroy Williams amounts to a breach of the duty of good faith and fair dealing." Complaint ¶ 25. That is, the allegations that Prime breached its duty of good faith and fair dealing inherent in its insurance contract with Elite mirrors the breach of contract allegations of the preceding Count. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Chapman v. Cornwall*, 58 V.I. at 441(quoting RESTATEMENT (SECOND) OF CONTRACTS § 205). "The duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations. A successful claim ... requires proof of acts amounting to fraud or deceit..." *Id.* (citation omitted).

¶ 20    Here, because Prime had no duty to defend or cover the claims against Elite in the tort action, Elite could not have harbored any *reasonable* expectation of coverage by Prime. Plaintiff has presented no factual basis for his claim of Prime's breach of this implied covenant in its contract with Elite and has not proffered any evidence of acts of Prime "amounting to fraud or deceit." Rather, Plaintiff has simply alleged that Prime failed to defend and indemnify Elite in the tort action, without even claiming by his Complaint that Prime acted fraudulently or deceitfully in its response to Elite's tender to it of the tort action for defense. Accordingly, Plaintiff has failed to allege any facts or provide any proof to permit a finding that Prime breached its duty of good faith and fair dealing with respect to the assault action Plaintiff filed against Elite, and Prime's Motion will be granted as to this Count.

¶ 21    Count IV: Negligence.

The foundational elements of negligence are well-settled in the Virgin Islands, consisting of: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado*, 61 V.I. at 380. Accordingly, in order to prevail on a claim for negligence, Plaintiff must first show that a duty existed and that same was breached before proceeding to the causation and damages elements.

¶ 22    Here, Plaintiff alleges that Prime was negligent in failing to properly evaluate the risk and exposure of Elite and in failing to procure the "appropriate coverage" for Elite, despite being fully informed, through Inter-Ocean, of Elite's "specific needs." Complaint ¶¶ 38-39. Plaintiff asserts that Inter-Ocean "acted as agents for Elite Security as well as agents for the Prime Defendants." *Id.* ¶ 9. Yet, the record is devoid of any proof that Elite ever communicated with Prime regarding the scope of coverage sought. Rather, the Affidavit of Aston Wayne Harty, president of Inter-Ocean, notes that in the relationships among Elite, Inter-Ocean and Prime, Inter-Ocean dating back to 2004, Inter-Ocean "was serving as the broker."[3] In the Virgin Islands, during the relevant period involving the interactions among the parties, an insurance broker was defined as "any person who, *on behalf of the insured*, for compensation *as an independent contractor*, for commission, or fee, and *not being an agent of the insurer*, solicits, negotiates, or procures insurance or reinsurance or the renewal or continuance thereof, or in any other matter aids therein, for insureds or prospective insured other than himself."[4] Plaintiff has offered no facts to rebut the affirmation of Wayne Harty that "Elite through its President, Romeo Christopher submitted [to Inter-Ocean] on March 26, 2009 a Commercial Insurance Application for Commercial General Liability Insurance for its Company..." Harty Affidavit ¶ 4. Accordingly, there are no facts in the record to suggest that there is an unresolved issue of material fact regarding Plaintiff's assertion that Prime was negligent in failing to evaluate Elite's risk and procure appropriate coverage.

¶ 23    Plaintiff further alleges that Prime knew or should have known that Elite needed a liability policy providing coverage for personal injury, assault and battery, false arrest, negligent hiring and retention "and other coverage that a security company would foreseeably need." Complaint ¶ 40. Essentially, Elite alleges that Prime was negligent in failing to provide Elite an insurance policy that covered claims arising from intentional torts committed by Elite's employees. In addition to the fact that Plaintiff provides no proof that Elite ever solicited such coverage from Prime, as opposed to from Inter-Ocean, acting as independent contractor broker on behalf of Elite, the "willful acts" and assault and battery exclusions set out in the Policy were "standard with respect to all commercial policies" such that "there was no alternative, to either Inter-Ocean or to Elite, to

---

[3] Memorandum in Support of Inter-Ocean's Motion for Summary Judgment, Exhibit A, ¶ 3.

[4] 22 V.I.C. § 751(c) (emphasis added). The statute was amended by Act No. 7964, effective February 19, 2017, without substantive change to the definition of "broker," now defined at 22 V.I.C. § 751a(d).

secure insurance coverage without these exclusions, as no carriers were issuing commercial policies in the U.S. Virgin Islands without theses exclusions." Harty Affidavit ¶ 9-10.

¶ 24    It is arguable whether Plaintiff could present against Prime a colorable claim in negligence not barred by the gist of the action doctrine, requiring that claims arise out of the scope of a contract sound in contract and not in tort. Nonetheless, Plaintiff has not provided proof of the existence of a duty that Prime breached. Plaintiff has not supported his claim that Prime had a duty to evaluate the risk and exposure to Elite. Rather, the record and Virgin Islands law are consistent with the independence of Prime from any breach occasioned by Elite's submission of an application to Inter-Ocean, which did not act as agent for Prime in this context. Further, to the extent that a duty could be imposed upon Prime to procure a liability policy to meet Elite's "specific needs" (Complaint ¶ 41), Plaintiff has failed to rebut the record evidence to the effect that no liability policy without the objectionable exclusions from coverage was available in the Virgin Islands. Accordingly, because Plaintiff has not articulated any duty of Prime that a finder of fact could reasonably determine was breached by Prime, Prime's Motion will be granted as to Count IV.

¶ 25    Count V: Failure to Defend and/or Indemnify.

Plaintiff claims that by failing to defend and/or indemnify Elite against the claims asserted by Plaintiff in the tort action, Prime violated its duty under the Policy. Complaint ¶ 47. However, as noted above, Plaintiff's claims against Elite were explicitly excluded from coverage in the Policy. "The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this Chapter shall constitute the entire contract between the parties." *Joseph v. Inter-Ocean Ins. Agency, Inc.,* 59 V.I. 820, 825 (V.I. 2013) (concerning statutory provision regarding compulsory automobile liability policy) (citation omitted) (emphasis in original omitted). Here, Plaintiff points to no statutory or regulatory provision that would supersede the plain language of the Policy. Because the Policy terms exclude precisely the defense and indemnification Elite sought from Prime, without any overriding statutory mandate imposing coverage contrary to the Policy terms, Prime had no duty to defend or indemnify Elite in the tort action, and its Motion will be granted as to Count V.

¶ 26    Count VI: Bad Faith.

Plaintiff alleges that Prime's conduct in failing to defend and/or indemnify Elite constitutes

the tort of bad faith, which "evolved in most jurisdictions from the duty of fair dealing and good faith insurers owe their insured by virtue of an insurance contract." *Justin v. Guardian Ins. Co.*, 23 V.I. 278, 281 (D.V.I 1987) (citation omitted). In that case more than 30 years ago, the District Court set forth the standard it required to make out a claim for bad faith, putting the parties on notice of their obligations and duties. "[I]n the Virgin Islands, in order to make out a cause of action for the tort of bad faith a plaintiff will be required to show: 1) the existence of an insurance contract between the parties and a breach by the insurer; 2) intentional refusal to pay the claim; 3) the nonexistence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact; 4) the insurer's knowledge of the absence of such a debatable reason or 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason." *Id.* at 282.

¶ 27    As described above, Plaintiff has failed to present evidence of a beach of the Policy by Prime. Prime did intentionally refuse to defend or pay the claim against Elite for the legitimate reason that coverage for the claims presented against Elite was specifically subject to exclusion under the Policy terms. Accordingly, viewing the record in the light most favorable to Plaintiff as nonmovant, there is no disputed issue of material fact with regard to the Policy exclusions, such that Plaintiff's claim that Prime acted in bad faith must fail. Prime's Motion will be granted as to Count VI.

¶ 28    Count VII: Fraud.

Assuming, without deciding, that Plaintiff's Complaint satisfies the pleading requirements of V.I. R. Civ. P. 9(b) that the circumstances constituting fraud must be stated with particularity, Plaintiff nonetheless cannot survive summary judgment on this Count. The Complaint alleges that Defendants intentionally falsely told Elite that the Policy sold to Elite would protect it from all liability claims. Complaint ¶ 60. As noted above, Prime, as insurer, by statute is not held responsible for the acts and representations of independent broker Inter-Ocean, not an agent of Prime. Also, the facts in the summary judgment record contradict the allegations of the Complaint and have not been challenged by any countervailing presentation of facts. Through its president, Elite obtained the Policy "with full knowledge of the terms, conditions and exclusions of the Prime policy." Harty Affidavit ¶ 6. At no time did Elite's representative seek coverage for

"willful/intentional acts and/or acts of assault and battery," nor did Elite seek coverage for any "special needs." *Id.* ¶ 7. The exclusions from coverage were explained to Elite's president and "he knew there would be no coverage for any willful/intentional act, assault or battery." *Id.* ¶ 11. Coverage for risks relating to intentional torts was unavailable in the Virgin Islands for the Policy in issue as was the case "for the coverage years prior thereto." *Id.* ¶ 9. None of these facts in the record has been challenged by Plaintiff, and those facts are undisputed in the consideration of Prime's Motion.

¶ 29    The elements of proof required to sustain a common law cause of action for fraudulent misrepresentation have recently been reviewed in the Superior Court. In *Arvidson v. Buchar,* the court set forth six elements that comprise a fraudulent misrepresentation claim in the Virgin Islands, as follows: 1) a misrepresentation; 2) the defendant's knowledge or reason to know that the misrepresentation was false; 3) the defendant's making the misrepresentation for the purpose of inducing another to act or to refrain from acting; 4) the plaintiff's justifiable reliance upon the misrepresentation; and 5) the pecuniary loss or injury 6) caused by justifiably relying upon the misrepresentation. 71 V.I. 277, 358 (V.I. Super. 2019) (adopting *Banks'* analysis of *Merchants Commercial Bank v. Oceanside Village, Inc.,* 64 V.I. 3, 21-22 (V.I. Super. 2015) based upon RESTATEMENT (SECOND) OF TORTS § 525).

¶ 30    The record here includes uncontradicted proof in support of Prime's position that it made no false representations of material fact to Elite. Plaintiff has not presented facts in response to Prime's Motion to permit a finding that any misrepresentation regarding the Policy was made by Prime or an agent of Prime. In fact, Plaintiff does not challenge Prime's proof that it made no representations concerning necessary coverage or the Policy to Elite, as all communications occurred through Inter-Ocean, the independent broker seeking coverage on behalf of Elite. Without facts in the record disputing that Prime, directly or through an agent, made a misrepresentation of fact regarding the Policy, Plaintiff's claim fails to establish the first element of a fraudulent misrepresentation claim and cannot, therefore, survive summary judgment. Accordingly, Prime's Motion will be granted as to Count VII.

¶ 31    Count VIII: Negligent Misrepresentation.

In his Complaint, Plaintiff alleges that Inter-Ocean misrepresented the Policy coverage, a misrepresentation that Prime ratified. Complaint ¶¶ 68-69. The Complaint does not allege any

specific misrepresentation, only that Inter-Ocean misrepresented the coverage that Elite was to receive under the Policy. *Id.* ¶ 68. Virgin Islands courts have held that to state a claim for the tort of negligent misrepresentation, a plaintiff must allege that: 1) the defendant made a representation that was false; 2) the defendant should have known the representation to be false; 3) the plaintiff relied upon the representation; 4) the plaintiff suffered pecuniary loss due to its justifiable reliance on the representation; and 5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Addie v. Kjaer,* 51 V.I. 507, 511 (D.V.I. 2009) (citing RESTATEMENT (SECOND) OF TORTS § 552). A successful claim of negligent misrepresentation "requires an *express* representation which is false or misleading at the time it is made." *Id. (citing Charleswell v. Chase Manhattan Bank, N.A.,* 45 V.I. 495, 521 (D.V.I. 2004) (emphasis in original).

¶ 32    The Complaint alleges generally that Elite described to Inter-Ocean its business involving security operations with no dogs and 20 employees, including five who occasionally provide armed security services. With that information "of Elite's Security's specific needs," Inter-Ocean issued the Policy "purporting to provide it coverage and protection from foreseeable security related claims." Complaint ¶¶ 14-15. These allegations are unsupported by any proof in the summary judgment record and are contradicted by Inter-Ocean's president: "At no time did [Elite] ever request insurance from Inter-Ocean that would cover willful/intentional acts and/or acts of assault and battery." And Elite sought no coverage for any "special needs." Harty Affidavit ¶ 7. Even the allegations of the Complaint, unsupported in the record, fail to set forth facts that Inter-Ocean *expressly* represented that the Policy covered intentional torts of Elite's employees. Instead, the Complaint alleges that Inter-Ocean issued the Policy based upon needs of the business as *generally* described by Elite.

¶ 33    In addition to the fact that Inter-Ocean acted independently on behalf of Elite and not as Prime's agent, Plaintiff has failed to present facts that demonstrate the existence of any genuine issue of material fact that Prime (or Elite) made an express false representation regarding the scope of coverage under the Policy. Because Plaintiff has failed to present proof from which a jury could determine that Prime falsely represented to Elite the scope of coverage under the Policy, he cannot establish the existence of the first element of the tort of negligent misrepresentation. Plaintiff's "failure to allege any affirmative, false representations requires that [his] negligent

misrepresentation claim be dismissed." *Charleswell*, 45 V.I. at 521. Prime's Motion will be granted as to this Count.

¶ 34    Count IX: Estoppel.

The Complaint alleges that Elite relied upon misrepresentations of Prime as to the scope of coverage to be placed if Elite agreed to purchase the Policy, and appears to allege that the Policy terms agreed to by Elite cannot be enforced against Elite because Prime had misrepresented those terms. Complaint ¶¶ 72-73. Neither party has presented a *Banks* analysis of a common law estoppel claim nor is any found in post-*Banks* Virgin Islands caselaw. In the context of an action for breach of contract alleging failure to procure insurance, the District Court cited the RESTATEMENT (SECOND) OF CONTRACTS § 90(1) in *Charleswell*,[5] noting that a promise without consideration may be enforceable against a promisor who should reasonably expect to induce action or forbearance by a promise, which does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.

¶ 35    Here, Plaintiff asserts that Prime is estopped from relying on the specific exclusions from defense and coverage set out within the Policy provisions on account of the alleged contrary promises made by Inter-Ocean concerning the scope of coverage. As with all other Counts, since Plaintiff has not presented proof of direct contacts between Elite and Prime, he depends upon a finding that Inter-Ocean acted as Prime's agent, rather than as an independent contractor acting on behalf of Elite. Additionally, here Elite consummated the insurance contract by accepting the Policy Plaintiff seeks to invalidate by reason of Elite's alleged pre-contract reliance upon representations as to terms that would be included in the Policy.

> Promissory estoppel should not be used to supplement or modify a written, enforceable contract. The doctrine applies in situations where parties failed to satisfy the formal requirements of contract formation and where justice would be served by enforcing a promise. Logically, a promissory estoppel claim can proceed only where a contract is absent. If the court finds that a contract exists, the promissory estoppel claim must fail. When parties have formed an enforceable contract, relief under a promissory estoppel claim is unwarranted.

*Orthovita, Inc v Erbe*, 2008 U.S. Dist. LEXIS 11088, *40-41 (E.D. Pa. 2008) (citations and internal quotations omitted).

---

[5] 45 V.I. at 509-10.

¶ 36    Though wholly unsupported by the record, if Inter-Ocean had made a promise to Elite, chargeable to Prime, that the Policy would provide defense and coverage for intentional torts, such promise is not enforceable against Prime. Prime cannot be deemed obligated on such a promise because no reliance by Elite could be deemed reasonable where the Policy terms explicitly state the contrary. Where a contract of insurance issues, the parties are bound by those contract terms, not by promises or representations in pre-contract communications or negotiations. The substantive terms of the parties' ultimate contractual agreement bind each as to benefits and obligations to which each is entitled and committed. *See Charleswell*, 45 V.I. at 509; *see also First American Development Group/Carib, LLC v. WestLB AG*, 55 V.I. 316, 330 (V.I. Super. 2011). As the coverage provided by the Policy was explicitly laid out in its terms, Elite was bound by those undisputed and unambiguous terms. There is no issue of fact in dispute and Prime's Motion will be granted as to this Count.

### Inter-Ocean's Motion for Summary Judgment

¶ 37    <u>Count I: Breach of Contract.</u>

Plaintiff asserts that "Inter-Ocean breached the contract of insurance by failing to pre-disclose to Elite Security exclusions set forth in the contract that were contrary to the contract Elite Security had requested." Complaint ¶ 20. By its Motion, Inter-Ocean presents evidence that the terms of the Policy were unchanged and renewed for each year from 2004 through 2010 "with no changes to the terms, conditions and exclusions." Harty Affidavit ¶ 3. Further, "information concerning Exclusions was provided to Mr. Christopher [Elite's president] at the time he procured his insurance coverage with Prime through Inter-Ocean, and the Exclusions were explained to him. As a consequence, he knew there would be no coverage for any willful/intentional act, assault or battery." *Id.* ¶ 11. "At no time was there ever any agreement that Inter-Ocean would obtain commercial insurance coverage for Elite's 'special needs.'" *Id.* ¶ 7 Given local insurance conditions in 2009, "there was no alternative, to either Inter-Ocean or to Elite, to secure insurance coverage without these exclusions, as no other carriers were issuing commercial policies in the U.S. Virgin Islands without these exclusions." *Id.* ¶ 10. Upon issuance of the Policy, Elite's president signed a Policy Receipt Form, acknowledging, among other things, that "Both [Prime's] delivery of the Policy to the broker or agent acting for you and your signature on this form

separately constitute your express acceptance of the terms and conditions of the Policy." Motion, Exhibit D, Policy Receipt Form and Coverage Conditions Summary. Plaintiff has presented no facts to dispute any of the forgoing.

¶ 38 Plaintiff has failed to allege any facts that would allow the Court to find that Inter-Ocean failed to "pre-disclose" to Elite the Policy provisions or that Prime breached those provisions of the insurance contract. In light of the undisputed facts in the summary judgment record, viewed in the light most favorable to Plaintiff as nonmovant, there are no genuine issues of material fact in dispute concerning the agreed Policy terms, Inter-Ocean is entitled to judgment as a matter of law on Plaintiff's breach of contract claim, and the Motion will be granted as to this Count.

¶ 39 Count II: Breach of Duty of Good Faith and Fair Dealing.

Plaintiff alleges that Inter-Ocean's conduct in failing to evaluate Elite's risk and to recommend and procure an "appropriate policy of insurance" to protect Elite against liability and from potential lawsuits amount to a breach of Inter-Ocean's contractual duty of good faith and fair dealing. Complaint ¶¶ 23-24. As noted, the undisputed record establishes that the Policy as issued was a renewal of the same liability coverage originally issued July 23, 2004 and renewed each succeeding year without changes. Harty Affidavit ¶ 3. Further, Inter-Ocean specifically explained coverage exclusions to Elite, Elite sought no coverage for needs particular to its business, and no carrier in the Virgin Islands was willing to offer Elite a commercial policy through Inter-Ocean that did not exclude intentional torts. *Id.* ¶¶ 7, 10, 11. In light of these facts, Elite could not have held any *reasonable* expectation of liability coverage without the exclusions to which Plaintiff now objects. Plaintiff has failed to present any facts that would allow a finding that Inter-Ocean breached its duty of good faith and fair dealing with respect to issuance of the Policy, and Inter-Ocean's Motion will be granted as to this Count.

¶ 40 Count III: Negligence.

Plaintiff alleges that Inter-Ocean negligently failed to recommend and procure adequate insurance coverage for Elite after being "fully informed of Elite's specific coverage needs." Complaint ¶ 29-30. To the extent that this Count may been seen to properly allege a negligence claim, rather than a claim sounding in contract, Plaintiff has failed to present evidence required to demonstrate the existence of an issue of material fact in dispute. Specifically, if Inter-Ocean had a

duty to exercise reasonable care in its relationship with Elite to procure appropriate liability coverage, the Affidavit of Inter-Ocean's president sets forth facts that purport to show that Inter-Ocean met its duty by explaining coverage exclusions to Elite's president and assuring through the Policy Receipt Form that Elite expressly accepted the terms of the Policy as issued. Plaintiff has presented no facts in support of the Complaint's allegation that Elite sought specific and particular coverage for any special needs, which is denied by Inter-Ocean's proof. Further, the record evidence remains undisputed, showing that no carrier in the Virgin Islands offered a commercial liability policy to include coverage for the intentional torts of employees of the insured.

¶ 41    Plaintiff has presented no evidence to show that Inter-Ocean breached any duty of care to Elite. Clearly, Inter-Ocean could not have provided commercial liability coverage including protection from the intentional tort giving rise to Plaintiff's original Superior Court action, where such coverage was universally excluded by all Virgin Islands liability insurers. Because Plaintiff has failed to provide facts in response to Inter-Ocean's Motion sufficient to support a claim of negligence, viewed in the light most favorable to Plaintiff, Inter-Ocean's Motion will be granted as to this Count.

¶ 42    Count VI: Bad Faith.

Plaintiff's Complaint equates both Defendants in this Count, alleging Inter-Ocean's bad faith conduct "on its own and as agent for Prime Defendants in failing to procure an appropriate policy for Elite Security, in failing to disclose all relevant exclusions to Elite Security, and failing to properly evaluate the risk and exposure." Complaint ¶ 52. As addressed above, the undisputed facts in the record establish that Inter-Ocean "was acting as your [Elite's] agent and NOT as our [Prime's] agent." Policy Receipt Form ¶ 4 (emphasis in original). Because Inter-Ocean was not an insurer, it cannot be liable for the tort of bad faith since the foundational element of such tort is the existence of an insurance contract between the parties. *See Justin v. Guardian Ins. Co.,* 23 V.I. at 282. Since Inter-Ocean is not an insurer and since there was no contract of insurance coverage between it and Elite, Plaintiff's allegations against Inter-Ocean as to this Count are misplaced and Inter-Ocean's Motion will be granted.

¶ 43    Count VII: Fraud.

Plaintiff alleges that Inter-Ocean's failure to properly evaluate the risk and exposure to

Elite and the failure procure an appropriate policy to cover Elite from the claims presented in the tort action by Plaintiff Steadroy Williams constitutes fraud. Complaint ¶ 57. Plaintiff asserts that Defendants intentionally falsely told Elite that the insurance policy would protect it from all liability claims. *Id.* ¶ 60. The elements of the tort of fraudulent misrepresentation are addressed above with regard to this same Count alleging liability of Prime. To the extent that the failures of Inter-Ocean as alleged could be deemed sufficient to state a cause of action for fraud, Plaintiff has failed to offer any factual support to rebut the facts presented with Inter-Ocean's Motion.

¶ 44   Inter-Ocean has provided evidence that Elite received, reviewed and expressly accepted the terms and conditions of the Policy. Policy Receipt Form ¶ 10. By the uncontested Affidavit of its president, Inter-Ocean has provided proof that Elite had full knowledge of the terms, conditions and exclusions of the Policy; that Elite did not seek coverage for intentional acts of its employees; or any other special needs. Harty Affidavit ¶¶ 6-7. Further, the intentional tort exclusions from coverage were explained to Elite's president and coverage during the policy term in issue was identical to that provided for the prior several years, which also excluded coverage for risks relating to intentional torts that was unavailable in the Virgin Islands *Id.* ¶¶ 9, 11. On these bases, Plaintiff's claim for fraud against Inter-Ocean fails and the Motion will be granted as to this Count.

¶ 45   Count VIII: Negligent Misrepresentation.

Plaintiff alleges that Inter-Ocean misrepresented, negligently if not fraudulently, the coverage that Elite Security was to receive under the Policy. Complaint ¶ 68. However, Plaintiff's allegations are unsupported in the record and Inter-Ocean's proof in support of its Motion refuting this allegation is undisputed. Specifically, Inter-Ocean explained the coverage exclusions to Elite's president, who sought no special coverage for Elite's particular business requirements. In addition, no carrier in the Virgin Islands offered commercial liability coverage without an exclusion for intentional torts. Harty Affidavit ¶¶ 7, 10, 11. As Plaintiff offers no facts to refute the proofs offered in support of Inter-Ocean's Motion, the Motion will be granted as to Plaintiff's negligent misrepresentation Count.

¶ 46   Count IX: Estoppel.

Plaintiff asserts that Elite relied upon the misrepresentations of Defendants Inter-Ocean and Prime as to the scope of coverage and that, therefore, Defendants were estopped from

enforcing the provisions of the Policy to deny defense and indemnification in the tort action. Complaint ¶¶ 72-73. As Inter-Ocean did not act as insurer, Plaintiff's estoppel claim is unrelated to and misplaced against Inter-Ocean. To the extent that the Complaint seeks to present an estoppel claim against Inter-Ocean, such claim fails and Inter-Ocean's Motion will be granted as to this Count.

¶ 47    Statute of Limitations.

In addition to the substantive claims presented by each Defendant's Motion, both assert that Plaintiff's claims are barred by the applicable statute of limitations. Defendants claim that the tort claims presented by Plaintiff's Complaint are barred by the two-year statute of limitations and Plaintiff's claims sounding in contract are barred by the six-year limitation period, set out in 5 V.I.C. § 31(5)(A) and (3)(A), respectively. The Complaint alleges that Prime notified Elite of its denial of coverage on April 30, 2010, such that the Complaint in this action should have been filed as to tort claims not later than April 30, 2012 and as to contract claims not later than April 30, 2016. Plaintiff brings his action as assignee of Elite Security. Elite filed its original Third-Party Complaint in that action seeking comparable relief to that sought here against the Prime Defendants and Inter-Ocean on May 19, 2010.

¶ 48    Plaintiff has not responded to this argument of Defendants and neither Defendant has acknowledged Elite's filing in the tort action or presented any argument whether Plaintiff should be entitled in this action to have the limitation date equitably tolled to the date that Elite's Third-Party Complaint was filed there, in compliance with the statutory limitations periods. As that issue is not addressed by the parties and as Plaintiff's claims are all disposed of substantively by the Motions, the Court declines to rule on Defendant's statute of limitations claims.

## CONCLUSION

¶ 49    In reviewing Prime's Motion to Dismiss, converted to a motion for summary judgment and Inter-Ocean's Motion for Summary Judgement, the Court must determine whether there exist genuine disputes of material facts that would impact the outcome of the case under applicable law, without weighing the credibility of the evidence offered. Any conflicting allegations, if properly supported by the record, are resolved in favor of Plaintiff as the nonmoving party and all inferences from the evidence are drawn in favor of the nonmovant. Each moving party bears the burden of

demonstrating the absence of any genuine issue of material fact. As set out above as to each Count, each moving Defendant has satisfied its burden to produce evidence of the absence of material facts in dispute, while Plaintiff has failed to present affirmative evidence beyond the allegations of his pleading from which a jury might reasonably return a verdict in his favor. Accordingly, for the reasons set forth above, it is hereby

ORDERED that Defendants Prime Insurance Syndicate, Inc. and Prime Insurance Company's Motion to Dismiss, converted to a motion for summary judgment, is GRANTED, and all claims against the Prime Defendants as set forth in Count I, Count II, Count IV, Count V, Count VI, Count VII, Count VIII and Count IX are DISMISSED with prejudice. It is further

ORDERED that Defendant Inter-Ocean Insurance Agency, Inc.'s Motion for Summary Judgment is GRANTED, and all claims against Defendant Inter-Ocean as set forth in Count I, Count II, Count III, Count VI, Count VII, Count VIII and Count IX are DISMISSED with prejudice.

DATED: October 23, 2020.

DOUGLAS A. BRADY, JUDGE

ATTEST:
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor II
10/23/20